# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1963

_____

| | | |
|---|---|---|
| Willie Gordon, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Shafer Contracting Co., Inc., | * | District of Minnesota. |
| | * | |
| Defendant-Appellee. | * | |
| | * | |
| ----------------------------------------------- | * | |
| | * | |
| Equal Employment Opportunity | * | |
| Commission, | * | |
| | * | |
| Amicus on Behalf of Appellant. | * | |

_____

Submitted: November 14, 2006
Filed: December 6, 2006

_____

Before LOKEN, Chief Judge, LAY and MELLOY, Circuit Judges.

_____

LAY, Circuit Judge.

Willie Gordon appeals the district court's[1] adverse grant of summary judgment. We affirm.

## BACKGROUND

Willie Gordon is a fifty-two year old African American male. Gordon worked for Shafer Contracting Co. ("Shafer"), a construction company, during the construction season from June 1994 to June 2003. Shafer's employees are unionized and governed by collective bargaining agreements ("CBA").

After Gordon failed to attend a 2003 kick-off meeting for prospective employees and transferred his union membership to Kentucky, Shafer did not hire Gordon as a laborer for the 2003 season. Subsequently, Shafer hired Gordon as a roller operator, a position represented by the 49ers union, to which Gordon did not belong. Following a confrontation with a 49ers union agent, Gordon stopped working as a roller operator. Gordon asked Shafer for a laborer position, but was told that none remained available.

Gordon subsequently submitted an intake questionnaire to the Equal Employment Opportunity Commission ("EEOC") in which he alleged he was the victim of race- and age-based discrimination at Shafer. He subsequently brought suit in district court, claiming that the failure to rehire him as a laborer for the 2003 season constituted age and race discrimination; that he was paid less than similarly-situated white laborers while at Shafer; and that he was subjected to a hostile work environment while at Shafer. The district court granted summary judgment in favor of Shafer on all claims.

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

# ANALYSIS

In this timely appeal, Gordon contends that he has raised issues of fact on all of his claims. Shafer contends that summary judgment was properly granted and that Gordon's claims are time-barred. "Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Clark v. Kellogg Co., 205 F.3d 1079, 1082 (8th Cir. 2000); see Fed. R. Civ. P. 56(c). Reviewing the district court's grant of summary judgment de novo, see Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999), we affirm.

## I. Statute of Limitations Issues

We first address Shafer's contention that Gordon's Title VII and Age Discrimination in Employment Act ("ADEA") claims are time-barred because he did not file a formal charge with the EEOC within the deadline. Claims of discrimination must be made in the form of a "charge" with the EEOC within 300 days of the alleged wrong. 42 U.S.C. § 2000e-5(e)(1). While Gordon's formal charge was outside the deadline, he did fill out an EEOC Intake Questionnaire, which he signed under penalty of perjury, within the deadline. In an amicus brief, the EEOC urges us to accept such a verified Intake Questionnaire as satisfying the charge requirement.

As we affirm the dismissal of Gordon's claims on the merits, we need not decide this question, for the charge requirement is not jurisdictional. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (stating that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling").

-3-

II.  Gordon's Hostile Work Environment Claims

A hostile environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 566 (8th Cir. 2000) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations and further citation omitted)).  Hostile work environments created by supervisors or coworkers have the following elements in common:  (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment. Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038 (8th Cir. 2005).  In addition, for claims of harassment by non-supervisory personnel, Gordon must show that his employer knew or should have known of the harassment and failed to take proper action. See Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999).  To constitute a hostile work environment, the harassment must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Harris, 510 U.S. at 21 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).

Shafer is vicariously liable for harassment by its supervisory personnel unless it can establish that (1) Shafer exercised reasonable care to prevent and promptly correct any harassing behavior; and (2) Gordon unreasonably failed to take advantage of the preventive or corrective opportunities provided by Shafer.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).  An employer may assert the affirmative defense only "[w]hen no tangible employment action is taken." Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998).

-4-

Gordon alleges that statements by Boyd Heilig, a coworker, and Gary Heilig, a supervisor, created a hostile work environment. Gordon contends that Boyd Heilig made three to four racially offensive comments to him and additional sexually offensive comments to him. This limited number of offensive comments is insufficient to create a hostile work environment. See Burkett v. Glickman, 327 F.3d 658, 662 (8th Cir. 2003) ("Offhand comments and isolated incidents of offensive conduct (unless extremely serious) do not constitute a hostile work environment.").

Gordon testified that Gary Heilig greeted him with racially offensive remarks two or three times a week, as well as making other offensive remarks to him. Crediting this testimony, as we are required to do on review of a summary judgment, we assume that these remarks are sufficiently pervasive to constitute a hostile work environment. Shafer argues that its antidiscrimination policies, and Gordon's failure to attempt to use its remedies, establish the Ellerth-Faragher defense with respect to alleged harassment by Gary Heilig. We agree.

Shafer publishes an Employee Policy Manual ("Manual") that describes its antidiscrimination policies and reporting procedures, including a policy against harassment. This manual is distributed to all employees at the beginning of each construction season; Gordon acknowledges receiving the policy before the 2002 season. The Manual identifies three company officials to whom harassment can be reported and provides their work and home telephone numbers. Gordon never reported the alleged harassment to any of these officials. He claims he failed to do so because he believed reporting would be ineffective. Such bare assertions are insufficient to avoid summary judgment. We affirm the district court's holding that Shafer established the Ellerth-Faragher defense with respect to alleged harassment by Gordon's supervisor.

III.  Gordon's Discriminatory Discharge Claim

Gordon contends that Shafer's failure to hire him for the entire 2003 season constitutes a racially-discriminatory discharge.  The McDonnell Douglas burden-shifting framework governs claims of race discrimination under Title VII and Section 1981.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Griffith v. City of Des Moines, 387 F.3d 733, 736-37 (8th Cir. 2004) (reaffirming applicability of McDonnell Douglas to Title VII race discrimination claims); Patterson v. McLean Credit Union, 491 U.S. 164, 186-87 (1989) (applying McDonnell Douglas framework to claims under 42 U.S.C. § 1981).  Under McDonnell Douglas, Gordon must first establish a prima facie case of discrimination. The burden of production then shifts to Shafer to present a legitimate reason for the allegedly discriminatory action. McDonnell Douglas, 411 U.S. at 802. If Shafer does so, the burden shifts back to Gordon to establish that the asserted legitimate reason was merely a pretext for a discriminatory action. Id. at 804.

A prima facie case of discrimination in a failure-to-hire context requires Gordon to show that (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the defendant was seeking applicants; (3) he was rejected; and (4) the defendant sought applications from others.  Chambers v. Wynne Sch. Dist., 909 F.2d 1214, 1216 (8th Cir. 1990).

Assuming that Gordon has set out a prima facie case, his claim fails because he has failed to present evidence that Shafer's reasons for failing to hire him were a pretext for unlawful discrimination.  Gordon did not attend the pre-season meeting and did not contact Shafer for a laborer position until after those jobs had been filled.  Officials at Shafer were informed that Gordon intended to transfer his union membership to Kentucky and believed that he did not seek work for 2003.  After working as a roller operator for two weeks, Gordon left following a confrontation with a 49ers union agent.  Gordon's departure further convinced Shafer that he did not wish

continued employment with Shafer. As Gordon failed to offer evidence of pretext, we affirm the grant of summary judgment.

### IV.  Gordon's Age Discrimination Claim

The McDonnell Douglas framework also governs Gordon's claim that Shafer's failure to hire him for the 2003 season constituted age discrimination. Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1035 (8th Cir. 2005). A prima facie case of age discrimination requires Gordon to show that (1) he was at least forty years old; (2) he suffered an adverse employment action; (3) he was meeting Shafer's reasonable expectations at the time of his termination; and (4) he was replaced by someone substantially younger. Id. As with his race discrimination claim, Gordon fails to offer evidence that Shafer's reasons for not offering him a laborers' position were a pretext for illegal discrimination. We affirm the grant of summary judgment on this claim.

### V.  Gordon's Wage Discrimination Claim

Title VII and Section 1981 prohibit wage discrimination based on race. See 42 U.S.C. §§ 2000e-2, 1981. Gordon claims that he was paid less for his work as a gate guard than white gate guards. Shafer offers undisputed evidence, however, that all the gate guards received the wage mandated by the CBA. Accordingly, we affirm the dismissal of this claim.

**CONCLUSION**

For the reasons stated above, the judgment of the district court is affirmed.

_____