*408 Justice Thomas,
with whom Justice Scalia joins, dissenting.
Today the Court decides that a “charge” of age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA) is whatever the Equal Employment Opportunity Commission (EEOC) says it is. The filing at issue in this case did not state that it was a charge and did not include a charge form; to the contrary, it included a form that expressly stated it was for the purpose of “pre-charge” counseling. What is more, the EEOC did not assign it a charge number, notify the employer of the complainant’s[1] allegations, or commence enforcement proceedings. Notwithstanding these facts, the Court concludes, counterintuitively, that respondent’s filing is a charge because it manifests an intent for the EEOC to take “some action.” Ante, at 400. Because the standard the Court applies is broader than the ordinary meaning of the term “charge,” and because it is so malleable that it effectively absolves the EEOC of its obligation to administer the ADEA according to discernible standards, I respectfully dissent.
I
As the Court notes, the ADEA directs the agency to take certain actions upon receipt of a “charge” but does not define that word. Ante, at 395. Because there is nothing to suggest that Congress used “charge” as a term of art, we must construe it “in accordance with its ordinary or natural meaning.” See FDIC v. Meyer, 510 U. S. 471, 476 (1994). Dictionaries define a “charge” as an accusation or indictment. *409 See, e. g., American Heritage Dictionary 312 (4th ed. 2000); Webster’s Third New International Dictionary 377 (1993). In legal parlance, a “charge” is generally a formal allegation of wrongdoing that initiates legal proceedings against an alleged wrongdoer. In criminal law, for example, a charge is defined as “[a] formal accusation of an offense as a preliminary step to prosecution.” Black’s Law Dictionary 248 (8th ed. 2004). Similarly, in this context, a “charge” is a formal accusation of discrimination that objectively manifests an intent to initiate enforcement proceedings against the employer. Just as a complaint or police report that describes the commission of a crime is not a “charge” under the criminal law, so too here, a document that merely describes the alleged discrimination and requests the EEOC’s assistance, but does not objectively manifest an intent to initiate enforcement proceedings, is not a “charge” within the meaning of the ADE A.
This understanding of a “charge” is common in administrative law. The regulations governing allegations of unlawful employment practices at the Government Accountability Office, for example, define “charge” as “any request filed ... to investigate any matter” within the jurisdiction of the agency. 4 CFR § 28.3 (2007). In actions alleging unfair labor practices, the “purpose of the charge is ... to set in motion the [National Labor Relations] Board’s investigative machinery.” Flex Plastics, Inc., 262 N. L. R. B. 651, 652 (1982). In accordance with the charge’s purpose of triggering an investigation that involves notice to the employer, agencies often indicate that the charge will not be kept confidential. For example, the EEOC anticipates that a charge usually will be released to the employer. See, e. g., 1 EEOC Compliance Manual § 2.2(b), p. 2:0001 (Aug. 2002) (hereinafter EEOC Manual) (providing that correspondence may be processed as a charge if, inter alia, it “does not express concerns about confidentiality”); id., § 3.6, at 3:0001 (June 2001) (noting that “it is EEOC policy to . . . serve the [employer] with a copy *410 of ADEA charges unless this will impede EEOC’s law enforcement functions”).
The ordinary understanding of the term “charge” applies equally in the employment discrimination context, where a charge is a formal accusation that an employer has violated, or will violate, employment discrimination laws. See 29 CFR § 1626.3 (2007) (describing a charge as an allegation that an employer “has engaged in or is about to engage in actions in violation of the Act”). The charge is presented to the agency with jurisdiction over such matters — the EEOC — to trigger enforcement proceedings that are intended to eliminate violations of the ADEA. See 29 U. S. C. § 626(d) (directing the agency, upon receipt of a charge, to notify the employer and take steps to eliminate the allegedly unlawful practice). I therefore agree with the EEOC that the statutory term “charge” must mean, at a minimum,[2] a writing that objectively indicates an intent to initiate the agency’s enforcement processes. See Brief for United States as Amicus Curiae 15 (noting that a charge must “objectively manifest an intent to make a formal accusation” of an ADEA violation).[3] In any event, respondent’s documents do not *411 objectively indicate an intent to initiate the EEOC’s processes; any test that construes them otherwise is, in my opinion, an unreasonable construction of the statutory term “charge,” and unworthy of deference. See Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 843-845 (1984).
II
The cumulative effect of two aspects of respondent’s documents, the Court holds, illustrates that she filed a charge of discrimination: first, her request in her affidavit that the agency take'action, and second, her marking of a box on the questionnaire form consenting to the release of her identity to her employer, Federal Express Corporation (FedEx). Ante, at 405-406. In my view, neither of these factors, separately or together, objectively indicates that respondent intended to initiate the EEOC’s processes.
The last substantive paragraph of respondent’s affidavit said: “Please force Federal Express to end their age discrimination . . . .” App. 273. But the issue here is not whether respondent wanted the EEOC to cause the com *412 pany’s compliance by any means; it is whether she wanted the EEOC immediately to employ the particular method of enforcement that consists of filing a charge. Her request to “force Federal Express to end their age discrimination” could have been met by the agency’s beginning the interviewing and counseling process that would ultimately lead to a charge. Or the agency could have proceeded to enforcement without a charge. See infra, at 417, n. 5 (discussing the EEOC’s authority to investigate age discrimination in the absence of any charge). Alternatively, after receiving indications of repeated violations by a particular company on many intake questionnaires, the agency could have approached the company informally, effectively forcing compliance by the threat of agency litigation. See B. Lindemann & D. Kadue, Age Discrimination in Employment Law 470 (2003) (“The EEOC may commence litigation under the ADEA without having to first file a charge, so long as it has attempted conciliation"). That sort of action would also have satisfied respondent’s request. Respondent’s statement to the EEOC no more constitutes expression of a present intent to file a charge than her request to a lawyer that he put an end to her employer’s discrimination would constitute expression of present intent to file a complaint. The Court is simply wrong to say that a charge must merely request that the agency take “some action,” ante, at 400, or “whatever action is necessary to vindicate her rights,” ante, at 398, or unspecified “remedial action to protect the employee’s rights,” ante, at 402. To the contrary, a charge must request that the agency take the particular form of remedial action that results from filing a charge.
Aside from revealing the ambiguity in its definition of a “charge,” the Court’s constructions stretch the term far beyond what it can bear. A mere request for help from a complainant — who, the Court acknowledges, may “have no detailed knowledge of the relevant statutory mechanisms and agency processes,” ante, at 403 — cannot be equated with *413 an intent to file a charge. The Court’s test permits no principled basis for distinguishing a request for the agency to take what might be described as “pre-charge” actions, such as interviewing and counseling, from a request for the agency to commence enforcement proceedings. All are properly considered “agency action,” all presumably would be part of the agency’s remedial processes, and all are designed to protect the employee’s rights. But a complainant’s intent to trigger actions unrelated to charge processing plainly cannot form the basis for distinguishing charges from other inquiries because it lacks any grounding in the meaning of the statutory term.
Even if respondent’s statement, viewed in isolation, could reasonably be understood as reflecting the requisite intent, it must be viewed in context. It is clear that respondent’s filing, taken as a whole, did not amount to a request for the EEOC to commence enforcement proceedings. In fact, respondent’s affidavit is replete with indications of an intent not to commence formal agency action. The entire first paragraph is an extensive statement that respondent had been assured her affidavit would be kept confidential, App. 266, suggesting that she did not intend the document to initiate enforcement proceedings, which would require the EEOC to notify FedEx of her allegations. See 1 EEOC Manual § 2.2(b), at 2:0001 (stating that correspondence expressing concerns about confidentiality should not be treated as a charge). She identified the document as a “complaint.” App. 266. And although the document was notarized and respondent attested to its truthfulness, nowhere did she state that she authorized the EEOC to attempt to resolve the dispute. Id., at 266-274. Finally, the affidavit was attached to the intake questionnaire, which also gave no objective indication of any intent to activate the EEOC’s enforcement proceedings.
As the Court concedes, the agency would not consider respondent’s intake questionnaire a charge. Ante, at 405. In *414 deed, we are in agreement that the form contains numerous indicators that it will not be considered a charge. Ibid. (stating that the “design of the form . . . does not give rise to the inference that the employee requests action against the employer,” and “[i]n fact the wording of the questionnaire suggests the opposite”). The title of the form, “Intake Questionnaire,”[4] suggests that its purpose is preliminary information gathering, not the filing of a formal charge. Likewise, the statement at the top of the form indicates that further steps are anticipated: “Please answer the following questions, telling us briefly why you have been discriminated against in employment. An officer of the EEOC will talk with you after you complete this form.” App. 265. The form gives the complainant the opportunity to keep her identity confidential. Ibid. And it contains a Privacy Act statement on the back, prominently referenced on the front of the form, which states that the information provided on the questionnaire “will be used by Commission employees to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over potential charges, complaints or allegations of employment discrimination and to provide such pre-charge filing counseling as is appropriate.” Ibid, (emphasis added).
The Court apparently believes that these objective indicators are trumped by the fact that respondent marked the *415 box authorizing the agency to disclose her identity to her employer. That portion of the form states: “Normally, your identity will be disclosed to the organization which allegedly discriminated against you. Do you . . . Consent or . . . not consent to such disclosure?” Ibid. Since the form states it is for a narrow purpose and that identities of complainants are normally disclosed, there is no reason to view respondent’s cheeking of the box as converting the form’s stated narrow purpose to a broader one.
In comparison to the intake questionnaire, the “Charge of Discrimination” form contains a number of objective indications that it will trigger the agency’s enforcement processes. Indeed, its very title clearly indicates that it is a charge, and it contains a space for a charge number. 1 EEOC Manual Exh. 2-C, at 2:0009. Although both forms require the complainant to sign and attest that the information is correct, only the charge of discrimination requests an attestation that the complainant intends to initiate the agency’s procedures. Just above the space for the complainant’s signature, the form states “I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.” Ibid. The form notes “Charging Party” at the bottom of the space for the signature. Ibid. And it states on the back that “[t]he purpose of the charge, whether recorded initially on this form or in some other way reduced to writing and later recorded on this form, is to invoke the jurisdiction of the Commission.” Id., at 2:0010. Also on the back, under “ROUTINE USES,” the charge of discrimination states that “[information provided on this form will be used by Commission employees to guide the Commission’s investigatory activities.” Ibid. Although the EEOC prefers to receive a completed charge form, see Brief for United States as Amicus Curiae 18, n. 9 *416 (noting that “EEOC’s preferred practice is indeed to receive a completed Form 5 whenever possible”), another writing could indicate a complainant’s intent to commence the EEOC’s enforcement processes. But the form chosen by the complainant must be viewed as strong evidence of the complainant’s intent, and that evidence should be deemed overcome only if the document, viewed as a whole, compels that conclusion.
For the reasons I have described, respondent’s intake questionnaire and attached affidavit do not objectively indicate that she intended to initiate the EEOC’s enforcement processes. The Court’s conclusion that, the two factors “were enough to bring the entire filing within the definition of charge,” ante, at 406, is not supported by the facts and, in my view, reveals that the Court’s standard is sufficiently vacuous to permit the agency’s post hoc interpretation of a document to control. But we cannot, under the guise of deference, sanction an agency’s use of a standard that the agency has not adequately explained. Cf., e. g., Pearson v. Shalala, 164 F. 3d 650, 660-661 (CADC 1999) (equating an agency’s denial of a party’s request based on the application of a vague term with simply saying “no” without explanation).
The malleability of the Court’s test is further revealed by its statement that “[tjhere might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required.” Ante, at 405. The clarity or pervasiveness of alleged discrimination is irrelevant to the employee’s intent to file a charge. Although the Court states that the “agency is not required to treat every completed Intake Questionnaire as a charge,” ibid., it apparently would permit the EEOC to do so, because under the Court’s test the EEOC can infer intent from circumstances — such as “clear *417 or pervasive” discrimination — that have no grounding in the “intent to act” requirement.[5]
Ill
Yet another indication that respondent’s documents did not objectively manifest an intent to initiate the EEOC’s enforcement processes is that the agency did not treat them as a charge. It did not assign a charge number, and it did not notify FedEx or commence its enforcement proceedings. This is not surprising: The EEOC accepts charges via a thorough intake process[6] in which completed intake questionnaires are not typically viewed as charges, but are used to assist the EEOC in developing the charge. A complainant visiting an EEOC office may be asked to complete an intake questionnaire. See EEOC FAQ, Answer to “How do I file a charge of employment discrimination?” online at https:// eeoc.custhelp.com. An EEOC investigator then conducts a precharge interview, 1 EEOC Manual §2.4, at 2:0001; 2 B. Lindemann & P. Grossman, Employment Discrimination *418 Law 1685 (4th ed. 2007), covering a range of topics, including applicable laws, the complainant’s allegations and other possibly discriminatory practices, confidentiality, time limits, notice requirements, and private suit rights. See 1 EEOC Manual §§ 2.4(a)-(g), at 2:0001-2:0003. Using the information contained in the intake questionnaire and gathered during the interview, the investigator drafts the charge on a Form 5 Charge of Discrimination according to specific agency instructions, and also drafts an affidavit containing background data. See id., §2.5, at 2:0003-2:0005. The investigator assigns a charge number and begins the process of serving notice on the employer and investigating the allegations. See 2 Lindemann & Grossman, supra, at 1685-1690.
Charges are thus typically completed and filed by the agency, not the complainant. See Edelman v. Lynchburg College, 535 U. S. 106,115, n. 9 (2002) (“The general practice of EEOC staff members is to prepare a formal charge of discrimination for the complainant to review and to verify” (citing Brief for United States et al. as Amici Curiae 24)); EEOC FAQ, Answers to “Where can I obtain copies of the forms to file a charge?” (stating that the agency’s policy is not to provide blank charge forms); “How do I file a charge of employment discrimination?” (“When the field office has all the information it needs, you will be counseled regarding the strengths and weaknesses of a potential charge and/or you will receive a completed charge form (Form 5) for your signature”), online at https://eeoc.custhelp.com. Once the charge is complete, the EEOC notifies the employer of the charge, usually attaching a copy of the completed charge form. 1 EEOC Manual §3.6, at 3:0001 (“While 29 CFR §1626.11 only requires notice to the [employer] that an ADEA charge has been filed, it is EEOC policy to also serve the [employer] with a copy of ADEA charges unless this will impede EEOC’s law enforcement functions”); *419 Inzeo Memorandum, online at http://www.eeoc.gov/eharge/ memo-8- 13-07.html.
To be sure, the EEOC is prepared to accept charges by other methods. If the complainant cannot or will not visit an EEOC office, an investigator may conduct the precharge interview and take the charge by telephone, see 1 EEOC Manual §§2.3, 2.4, at 2:0001, but the agency must reduce the allegations to writing before they will be considered a charge, see 29 CFR § 1626.8(b) (“[A] charge is sufficient when the Commission receives from the person making the charge either a written statement or information reduced to writing by the Commission that conforms to the requirements of §1626.6”). When the EEOC receives correspondence that is a potential charge, the investigator must contact the complainant and conduct an intake interview. See 1 EEOC Manual § 2.2(a), at 2:0001. Alternatively, if the correspondence “contains all information necessary to begin investigating, constitutes a clear and timely request for EEOC to act, and does not express concerns about confidentiality or retaliation,” then the investigator may process it as a charge without conducting an interview. See id., § 2.2(b), at 2:0001.
Thus, while the EEOC does not typically view an intake questionnaire as a charge, I would not rule out the possibility that, in appropriate circumstances, an intake questionnaire, like other correspondence, could contain the elements necessary to constitute a charge. But an intake questionnaire— even one accompanied by an affidavit — should not be construed as a charge unless it objectively indicates an intent to initiate the EEOC’s enforcement processes. As I have explained, respondent’s intake questionnaire and attached affidavit fall short of that standard. I would hold that the documents respondent filed with the EEOC were not a charge and thus did not preserve her right to sue.
The implications of the Court’s decision will reach far beyond respondent’s case. Today’s decision does nothing — ab *420 solutely nothing — to solve the problem that under the EEOC’s current processes no one can tell, ex ante, whether a particular filing is or is not a charge. Given the Court’s utterly vague criteria, whatever the agency later decides to regard as a charge is a charge — and the statutorily required notice to the employer and conciliation process will be evaded in the future as it has been in this case. The Court’s failure to apply a clear and sensible rule renders its decision of little use in future cases to complainants, employers, or the agency.
For these reasons, I would reverse the judgment below.

 This opinion will refer to potentially charging parties who contact the EEOC about discrimination as “complainants.” I use this term for simplicity and do not intend to invoke the distinction in the EEOC’s regulations between complainants and charging parties. See 29 CFR § 1626.3 (2007). Similarly, I use “respondent” not as it appears in the EEOC’s regulations — referring to the “prospective defendant in a charge or complaint,” ibid. — but as a reference to the responding parties in this case.

 I do not mean to foreclose the possibility that the EEOC may include additional elements in its definition, as long as they are reasonable constructions of the statutory term “charge.” See Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 843-845 (1984).

 As the EEOC acknowledges, its position on whether intent is required has varied over the years. See Brief for United States as Amicus Curiae 8,16-17, n. 8. In 1983, the agency issued its regulations, which contain no intent requirement. Final Procedural Regulations; Age Discrimination in Employment Act, 48 Fed. Reg. 138. Five years later, it argued against an intent requirement as amicus curiae in Steffen v. Meridian Life Ins. Co., 859 F. 2d 534, 544 (CA7 1988) (“The EEOC, which has appeared as amicus curiae on Steffen’s behalf, has supported Steffen’s contention that a completed Intake Questionnaire, in and of itself, constitutes a charge”). In 2002, the agency issued an internal memorandum and internal guidance documents including an intent requirement. See Memorandum from Elizabeth M. Thornton, Director, Office of Field Programs, EEOC, to All District, Area, and Local Office Directors et al. (Feb. 21,2002), online at http:// *411 www.eeoc.gov/eharge/memo-2-21-02.html (all Internet materials as visited Feb. 22, 2008, and available in Clerk of Court’s case file); 1 EEOC Manual § 2.2(b), at 2:0001 (noting that correspondence must, inter alia, “constitut[e] a clear and timely request for EEOC to act” before it can be construed as a charge). The EEOC contradicted itself four years later, when it again took the position that there was no intent requirement in Gordon v. Shafer Contracting Co., 469 F. 3d 1191,1194 (CA8 2006) (“In an amicus brief, the EEOC urges us to accept such a verified Intake Questionnaire as satisfying the charge requirement”); see also Brief for United States as Amicus Curiae 16-17, n. 8. The following year, the EEOC issued another internal memorandum and updated the Frequently Asked Questions section of its Web site, including the intent requirement in each. Memorandum from Nicholas M. Inzeo, Director, Office of Field Programs, EEOC, to All District, Field, Area, and Local Office Directors et al. (Aug. 13, 2007) (hereinafter Inzeo Memorandum), online at http://www.eeoc.gov/ charge/memo-8-13-07.html; EEOC Frequently Asked Questions (hereinafter EEOC FAQ), Answer to “How do I file a charge of employment discrimination?” online at https://eeoc.custhelp.com.

 An apparently more recent version of Form 283 is entitled “Charge Questionnaire,” and states that, “[w]hen this form constitutes the only timely -written statement of alleg[ed]. . . discrimination, the Commission will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s).” 1 EEOC Manual, Exh. 1-B, at 1:0006 (June 2001); see also B. Lindemann & D. Kadue, Age Discrimination in Employment Law 477, n. 14 (2003). Although the “Charge Questionnaire” form is dated “Test 10/94,” and is the only questionnaire form included in the EEOC Manual, it was not the form respondent used. Her intake questionnaire form was dated 1987. App. 265.

 Perhaps the Court’s statement is intended to address the EEOC’s authority to investigate alleged discrimination even in the absence of a charge. Under Title VII, these are called “Commissioner Charges.” See, e. g., 29 CFR § 1601.11(a). While the ADEA does not provide for such charges, the EEOC has independent authority to investigate age discrimination in the absence of any charge. See 29 U. S. C. § 626(a); 29 CFR § 1626.4; Gilmer v. Inter state/Johnson Lane Corp., 500 U. S. 20, 28 (1991); 1 EEOC Manual §8.1, at 8:0001 (June 2001). If this is what the Court means by its statement that allegations of “clear or pervasive” discrimination may indicate to the agency that action is “required,” ante, at 405, then it is not clear how it is relevant to the standards at issue in this case for evaluating an individual complainant’s filing.

 This process, in all respects relevant to this case, has been consistently used by the agency since shortly after it assumed jurisdiction over ADEA actions in 1979. See 1 EEOC Manual §§2.1-2.7, at 2:0001-2:0006 (2002); 2 B. Lindemann & P. Grossman, Employment Discrimination Law 1220 (3d ed. 1996); B. Schlei & P. Grossman, Employment Discrimination Law 939-940, 942, 948 (2d ed. 1983).