# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 09-2732/3481/3482

_____

Carol L. Fuller,                            *
                                            *
    Appellee/Cross-Appellant,               *
                                            *   Appeals from the United States
v.                                          *   District Court for the
                                            *   Eastern District of Arkansas
Fiber Glass Systems, LP,                    *
                                            *
    Appellant/Cross-Appellee.               *

_____

Submitted: June 17, 2010
Filed: August 25, 2010

_____

Before MURPHY, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Carol L. Fuller, an African-American female, sued Fiber Glass Systems, L.P., (FGS) under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, claiming discrimination (non-selection), harassment (supervisor and co-worker), and retaliation. FGS moved for summary judgment, which was granted as to retaliation but denied as to the other claims. After a trial, the jury found for FGS on the non-selection claim, and for Fuller on the harassment claims. The jury awarded her a total of $65,000, but deadlocked on punitive damages. Fuller withdrew her claim for punitives, and sought attorney's fees, which the district court awarded in part. FGS appeals, arguing that the district court erred in denying its motions for judgment as a matter of law and for

a new trial, and in calculating the amount of attorney's fees. Fuller cross-appeals, seeking an increase in attorney's fees. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Fuller worked at FGS from October 2005 to May 2007, when she voluntarily quit. She initially worked as a proof tester, checking for leaks in fiberglass pipes, under the supervision of Dwight Marsenburg. In late August 2006, plant manager Ron Winfrey offered Fuller a temporary position in the corporate offices (a separate building at the same location) in the "Inside Sales Department" entering orders. Fuller accepted. She was the first African-American to work in the corporate offices since 1998.

Fuller's supervisor in the corporate offices was A. Dale Smith, a white male. Fuller worked alongside Patty L. Holmes and Yolanda Erasmus, both white females. Holmes was charged with training Fuller. Fuller testified that on her first day "[Holmes] informed me that she had attended a predominantly all-black school in Memphis and that she didn't like blacks, but she said that if I didn't cause her any stress or any tension, that she would try to tolerate me." Holmes also suggested that she had the power to determine if Fuller kept her position. Holmes maintained a hostile attitude toward Fuller, telling her "we really don't need you, you know," that the job was too hard for her, and that Fuller really didn't want it. Holmes asked Fuller many mornings, "Why did you come back?" Although a person in Fuller's position would normally answer the phone, Holmes told Fuller not to speak to customers on the phone because they were not used to hearing a "black voice or ethnic voice." At one point, Holmes and Smith attended a conference, leaving only Fuller and Erasmus in the office. Erasmus lost her voice, and had Fuller answer the phones. Fuller testified that Smith was "furious" when learning that she answered the phones, yelling and cursing Erasmus. Holmes also told Fuller to stay away from Erasmus because

Erasmus is from South Africa and very racist. (While it is true that Erasmus is from South Africa, Fuller found her to be friendly and helpful.)

Fuller testified that, on a Friday, within a week of starting in the corporate offices, she told Smith some of the things that Holmes was saying. The following Monday, Holmes confronted Fuller, saying that Smith had contacted her at home and told her that Fuller was complaining, and if Fuller wanted to keep her job, she needed to accept what goes on in the office and keep her mouth shut.

According to Fuller, she was excluded from office functions, followed to the bathroom, and not invited out to lunch with the others. In early October, Smith stood behind Fuller as she worked, making "monkey or gorilla gestures" while Holmes laughed.

Shortly after this incident, Fuller complained to her former supervisor, Marsenburg, about how she was being treated. He told her to hang in there, ignore the abuse, and hopefully things would get better. (Fuller believes that Marsenburg wanted to see her succeed in the corporate office since no African-Americans had worked there in a long time.)

Fuller walked off the job on October 25, 2006. This news reached Winfrey, the plant manager, who requested that she meet with him. At the meeting, Fuller disclosed what went on in the corporate office. Winfrey offered time off; she accepted. Fuller returned to her old proof-tester job on October 30. A week later, Winfrey came to Fuller's workstation, and asked her not to file a complaint, but rather to let him handle the matter by recommending training for Holmes and Smith. Fuller, however, did file a complaint. In November, FGS investigated Fuller's allegations, concluding that although they could not be corroborated, Holmes was fired because "she did not treat Ms. Fuller as we would want our employees treated."

FGS's policy on harassment and discrimination states:

> Any employee who has been subject to harassment of this nature, or who witnesses such, is to take the following actions: Calmly, but directly tell the individual(s) engaged in the behavior, "Stop," "As an employee of Fiber Glass Systems, I do not have to tolerate such behavior." If this does not resolve the problem, go to the next step. Go to your immediate supervisor and report the incident. If your immediate supervisor is personally involved, or there is no resolution to the situation after a reasonable amount of time, go to the next step. Notify your local Human Resource Representative or other local Management employee with whom you feel comfortable discussing such a matter. If there is no resolution to the situation after a reasonable amount of time, go to the next step. Contact the Fiber Glass Systems Division Human Resource Manager, notifying them of the situation and what efforts have been attempted.

Fuller acknowledged receiving this policy when she was hired in October 2005. FGS issued an updated policy, containing a hotline for reporting legal and ethical violations, in June 2006. Fuller signed a sheet indicating that she received the updated policy, but testified that she never actually received it.

Fuller sued FGS under 42 U.S.C. § 1981 and Title VII, alleging claims of discrimination (non-selection), harassment (supervisor and co-worker), and retaliation. After the district court granted summary judgment on the retaliation claim, a jury trial began in April 2009. At trial, FGS objected to Marsenburg's testimony on the ground that Fuller's counsel contacted him ex parte. It also objected to the testimony of another former FGS employee, on the basis of relevancy and prejudice. The district court allowed the challenged testimony.

At the close of Fuller's case, and again at the close of all proof, FGS moved (unsuccessfully) for judgment as a matter of law. FGS objected to several jury instructions, but was overruled. On April 21, jury deliberations began at 2:35 p.m. At 4:44 p.m., the district judge excused himself from the bench, stating: "I believe I'm

going to turn it over to [Magistrate] Judge Deere. Maybe I can get back by 5:30, but maybe not. . . ." Neither party consented to trial before the magistrate. At 5:14, the jury returned a verdict for FGS on the non-selection claim, and for Fuller on the harassment claims, awarding her $65,000. The magistrate judge accepted the jury's verdict, presided over the presentation of additional evidence on punitives, allowed additional argument from the parties, and instructed the jury on punitive damages. The jury deadlocked on punitives, and the district judge declared a mistrial as to punitive damages only. The district court then granted Fuller's motion to withdraw her claim for punitive damages. FGS timely moved for a new trial and judgment as a matter of law, which the district court denied.

FGS appeals, arguing in 09-2732 that (1) the district court erred in denying FGS's motion for judgment as a matter of law because (a) there was insufficient evidence to support the jury verdict as to the harassment claims, (b) the *Ellerth-Faragher* affirmative defense precluded liability, and (c) insufficient evidence supported the compensatory damages award; (2) the district court erred in failing to grant a new trial due to (a) the fact that the compensatory damages were clearly excessive and resulted from the consideration of improper factors, (b) error in admitting the testimony of Marsenburg and another FGS employee, (c) error in jury instructions, (d) allowing the magistrate to preside without consent of the parties. In 09-3481, FGS argues the district court's award of attorney fees should be set aside if it prevails on appeal, or should be reduced to half the amount requested even if FGS does not. In 09-3482, Fuller cross-appeals, seeking all the requested fees.

## II.

### A.

FGS argues that the district court erred in denying its motion for judgment as a matter of law. In considering this issue, "we review the district court's ruling de novo, viewing the evidence in the light most favorable to the party who prevailed

-5-

before the jury." ***Wilson v. Brinker Int'l, Inc.***, 382 F.3d 765, 769 (8th Cir. 2004) (internal quotation marks omitted). "Moreover, we review the district court's decision to grant or deny judgment as a matter of law with great deference to the jury's verdict. This Court will not set aside a jury verdict unless there is a complete absence of probative facts to support the verdict." ***Id.*** (internal citation and quotation marks omitted).

"Title VII . . . prohibits an employer from subjecting its employees to a hostile work environment 'because of such individual's race, color, religion, sex, or national origin.'" ***Al-Zubaidy v. TEK Indus., Inc.***, 406 F.3d 1030, 1038 (8th Cir. 2005) (quoting 42 U.S.C. § 2000e-2(a)(1); *citing*, *e.g.*, ***Nat'l R.R. Passenger Corp. v. Morgan***, 536 U.S. 101, 116 n. 10 (2002) (racial harassment)). "To establish a hostile work environment claim, [the plaintiff] must show (1) [s]he is a member of a protected class, (2) [s]he was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic under Title VII, (4) the harassment affected a term, condition or privilege of employment, and (5) employer liability." ***Al-Zubaidy***, 406 F.3d at 1038. "There can be no doubt federal harassment standards are demanding. Indeed, the Supreme Court has 'made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment.'" ***Id.*** (quoting ***Faragher v. City of Boca Raton***, 524 U.S. 775, 788 (1998)). "The Supreme Court also has made it abundantly clear that the 'standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code.'" ***Id.*** (quoting ***Faragher***, 524 U.S. at 788). "We can determine 'whether an environment is 'hostile' or 'abusive' . . . only by looking at all the circumstances[, which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." ***Id.*** (quoting ***Harris v. Forklift Sys., Inc.***, 510 U.S. 17, 23 (1993)) (alterations in original).

FGS claims that, compared to other cases, the harassment that Fuller endured was neither frequent nor severe enough to meet to meet this demanding standard. First, FGS cites a case where an African-American was called "boy" and "black boy" "on a few occasions over a period of years," and his manager once made a remark about African-Americans having big penises. *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir. 2003). This court affirmed judgment as a matter of law for the defendant in that case. *Id.* Next, FGS emphasizes a case where an African-American heard second-hand information that co-workers and managers referred to him and others with a racial slur. *Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 893 (8th Cir. 2005). This court held that this was insufficiently severe or pervasive conduct. *Id.* In *Singletary* this court placed substantial weight on the fact that the plaintiff didn't hear any racial slurs himself, and that the incidents occurred over a period of years. *Id.* Third, FGS cites *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191 (8th Cir. 2006), claiming that the court there found that three or four racially offensive comments were insufficient to create a hostile work environment. However, FGS misreads *Gordon*; the plaintiff there appealed a grant of summary judgment for the defendants, so the court assumed that the harassment was sufficiently severe, but it affirmed summary judgment based on the *Ellerth-Faragher* affirmative defense. *Id.* at 1193.

Here, the evidence sufficiently established that Fuller's work environment was hostile. On her first day at the corporate office, her co-worker/trainer told her she didn't like black people. That same co-worker asked her many days why she came back to work, telling her numerous times that the job was too hard for her and she didn't really want it. Fuller was told to stay off the phones because customers weren't used to hearing a black voice, and when she answered the phones, she was castigated by both her manager and the co-worker. Her manager made "monkey or gorilla gestures" behind her for the amusement of her co-worker. All of this took place within about two months. This harassment is both more severe and more frequent than that in *Elmahdi*, *Singletary*, or *Gordon*. Whether conduct rises to the level of

harassment is usually a factual determination for the jury. *See **Moring v. Arkansas Dep't of Corr.**,* 243 F.3d 452, 456 (8th Cir. 2001). The evidence here is enough to permit a reasonable juror to find that Fuller's work environment was permeated with discriminatory intimidation, ridicule, and insult.

FGS argues that some of the evidence of racial harassment had nothing to do with race, such as: (1) the fact Fuller did not get a fax machine code like every other employee in the corporate offices, (2) she was excluded from social functions, (3) she was yelled at by her supervisor, (4) she was told that the job was too hard for her, and (5) she was followed to the restroom. First, even ignoring these facts, there is sufficient evidence to convince a reasonable juror that Fuller's work environment was sufficiently hostile to support a harassment claim. Second, based on the many instances of overt racial harassment, a reasonable juror could find that one or more of the above facts occurred because of Fuller's race, even if the conduct was not inherently racial. *See **Hall v. Gus Constr. Co., Inc.**,* 842 F.2d 1010, 1014 (8th Cir. 1988) (holding that harassment based on sex need not be conduct of an inherently sexual nature); ***Green v. Franklin Nat'l Bank of Minneapolis***, 459 F.3d 909, 912 (8th Cir. 2006) (finding non-racial but intimidating comments "noteworthy" in a racial harassment claim).

**B.**

FGS contends that it is entitled to judgment as a matter of law because it established the *Ellerth-Faragher* affirmative defense. "The *Ellerth-Faragher* affirmative defense consists of two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior[ ] and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." ***Weger v. City of Ladue***, 500 F.3d 710, 718 (8th Cir. 2007). The district court correctly ruled that FGS met the first prong of this defense by giving

Fuller a copy of the harassment and discrimination policy, establishing a hotline for employees, conducting the investigation, and terminating Holmes and counseling Smith.

FGS argues that no reasonable juror could have found that FGS did not meet the second element; that is, that no reasonable juror could have found that Fuller took advantage of the preventative or corrective measures provided by FGS. FGS claims that Fuller unreasonably delayed filing her discrimination complaint. FGS's policy entails telling your supervisor about harassment, and if that doesn't resolve the problem, talking to another management employee with whom you feel comfortable. Fuller testified that within the first week, she complained to Smith, her supervisor, about how Holmes treated her, but Smith took no remedial action, and in fact told Holmes about her complaint. Fuller testified that she then went, more than once, to her old boss, Marsenburg, and told him about the racial harassment, but he told her to "hang in there." Finally, she met with the plant manager and filed a formal complaint about two months after starting in the corporate offices. Based on this evidence, a reasonable juror could find that Fuller did not unreasonably fail to take advantage of preventative/corrective opportunities offered by FGS, and thus FGS is not entitled to judgment as a matter of law on the *Ellerth-Faragher* affirmative defense.

## C.

FGS asserts that it is entitled to judgment as a matter of law on compensatory damages because Fuller did not demonstrate a sufficiently severe injury. "This court reviews the district court's compensatory damage award for clear error, giving due regard to credibility determinations of the district court." *Ledbetter v. Alltel Corporate Servs., Inc.*, 437 F.3d 717, 725 (8th Cir. 2006). "An award of damages for emotional distress must be supported by competent evidence of 'genuine injury.'" *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999) (quoting *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978)). A compensatory damages award may be

based solely on the plaintiff's own testimony. *Id.*; *see also **Ledbetter***, 437 F.3d at 725 ("a plaintiff's own testimony, coupled with the circumstances of the case, can sustain the burden of establishing emotional suffering"). Fuller testified that as a result of the emotional distress, she could not sleep, could not eat, and was so stressed that she felt sick to her stomach. She testified that she went to her doctor and was prescribed Wellbutrin, facts confirmed by her medical records. Also, plant manager Winfrey testified that Fuller had tears in her eyes when they met, and he gave her time off because of her emotional distress. This testimony was sufficient to allow a reasonable juror to award Fuller $65,000 in compensatory damages.

## D.

FGS argues that the district court should have granted a new trial because the award of $65,000 is clearly excessive. "We review a district court's denial of a motion for new trial with great deference, reversing only if the district court clearly abused its discretion." ***Wilson v. City of Des Moines***, 442 F.3d 637, 640 (8th Cir.2006). FGS notes that the award was based largely on Fuller's own testimony. However, the award of $65,000 is in line with other cases of employment discrimination. *See **Delph v. Dr. Pepper Bottling Co., Inc.***, 130 F.3d 349, 358 (8th Cir. 1997) (allowing damages for emotional distress of $50,000, even where "the emotional and physical complaints are vague and ill-defined, and are not characterized as especially intense"); ***Kim v. Nash Finch Co.***, 123 F.3d 1046, 1067 (8th Cir. 1997) ("After carefully reviewing the evidence, we conclude that, although an award of $1.75 million for emotional distress is grossly excessive, an award of $100,000 is not."); ***Kimzey v. Wal-Mart Stores, Inc.***, 107 F.3d 568, 570 (8th Cir. 1997) ($35,000); ***Kientzy v. McDonnell Douglas Corp.***, 990 F.2d 1051, 1054 (8th Cir. 1993) ($150,000). The district court did not abuse its discretion in refusing to grant a new trial on this issue.

FGS next contends that the compensatory damage award is the result of passion or prejudice, noting that juror eleven, the foreperson, said at the start of the punitive phase of the trial, "I think we took that into consideration when we put those amounts on the [compensatory damage/verdict] forms we just turned in to you." First, the jury had not yet been instructed on punitive damages, so it is unlikely the juror knew the legal bases for punitive damages. Second, rather than demonstrating improper considerations, this comment likely reflects frustration at having to hear additional evidence on other damages. The trial had already lasted a week, the compensatory damages award was returned at the end of the day (after 5 p.m.), and the magistrate judge had to take a poll whether the jury wanted to remain and finish, or return the next day. Moreover, FGS cites no cases where a similar comment warranted a new trial. It was not a clear abuse of the district court's discretion to deny FGS a new trial based on juror eleven's remark.

**E.**

FGS asserts that before trial, Fuller's counsel contacted Marsenburg ex parte, in violation of Rule 4.2 of the Arkansas Rules of Professional Conduct, because FGS was represented by counsel at the time and Marsenburg's act or omission of not forwarding Fuller's complaints of harassment was to be imputed to FGS for the purpose of civil liability. FGS also argues that the testimony of another FGS employee that he was racially harassed a year later was irrelevant and prejudicial to FGS. "When a motion for new trial is based on rulings regarding the admissibility of evidence, the district court will not be reversed absent a clear and prejudicial abuse of discretion." *Wilson*, 442 F.3d at 640-41. Even if the district court abused its discretion in admitting the testimony of these two, there was no prejudice. Marsenburg's failure to relay Fuller's complaints could have been imputed to FGS, but this was relevant only to the first prong of the *Ellerth-Faragher* affirmative defense, "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior." The district court held that FGS established this

-11-

prong; Fuller defeated the affirmative defense by showing that she took advantage of the remedial scheme set up by FGS. Because exclusion of Marsenburg's testimony would not have affected the outcome, there was not prejudice in denying FGS's motion for a new trial on this issue.

Similarly, the testimony of the other employee was introduced to establish that FGS did not exercise reasonable care to prevent and promptly correct any harassing behavior, as he claimed he was subject to racial harassment and his complaints fell on deaf ears. FGS complains that this evidence is irrelevant as this employee was harassed after Fuller's harassment ended and did not share the same supervisor. However, as noted above, the district court ruled that FGS established that it exercised reasonable care to prevent and promptly correct any harassing behavior. Therefore, it was not prejudicial to deny FGS's motion for a new trial on this issue.

### F.

FGS argues it is entitled to a new trial because in jury instructions numbers 7 and 8, the judge did not define the word "hostile." "We review the jury instructions given by a district court for an abuse of discretion." ***Warren v. Prejean***, 301 F.3d 893, 900 (8th Cir. 2002). "Our review is limited to whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." ***Id.*** (internal quotation marks omitted). "Moreover, even where a jury instruction is erroneously given to the jury, reversal is warranted only where the error affects the substantial rights of the parties." ***Id.*** "In other words, the error must be prejudicial." ***Id.***

Jury instructions numbers 7 and 8, as given by the district court, tracked 8th Cir. Civil Jury Instr. §§ 5.42, 5.43 (2008). The comment notes that it "may be appropriate" to include factors useful in determining whether a work environment is hostile, but this language is not mandatory. ***Id.*** at 5.42 note 6, 5.43 note 6. These

instructions fairly and adequately represent the applicable law in this circuit. *See, e.g.*, *Al-Zubaidy*, 406 F.3d at 1038.

FGS also objects to jury instruction number 10, on the first element of the *Ellerth-Faragher* affirmative defense. This instruction said that the jury should consider whether the defendant's harassment policy identified officials to whom harassment could be reported and required those notified of harassing conduct to forward the information to their superiors in determining whether the defendant exercised reasonable care in preventing and promptly correcting harassing behavior. First, this instruction fairly and adequately represents the applicable law in this circuit. *See, e.g.*, *Weger*, 500 F.3d at 719-20. Moreover, because the district court later ruled that FGS established the first element of the *Ellerth-Faragher* affirmative defense as a matter of law, any error in this instruction was not prejudicial. The district court did not abuse its discretion as to the jury instructions.

FGS asserts that verdict form number 2 on the supervisor-harassment claim was misleading because it referred only to the instruction outlining the elements of the claim, and not also to the instruction outlining the elements of the *Ellerth-Faragher* affirmative defense. This argument is without merit. Instruction number 9 clearly stated that the "verdict must be for the Defendant on the Plaintiff's claims of harassment" if the *Ellerth-Faragher* affirmative defense was proved by the greater weight of the evidence. The verdict form and jury instructions, taken as a whole, adequately represent the applicable law in this circuit, and the district court did not abuse its discretion.

## G.

FGS contends that the district court abused its discretion in denying its motion for a new trial because the magistrate judge improperly presided over the trial. The Federal Magistrate Judges Act provides that a magistrate judge may preside over civil

litigation matters either (1) when both parties consent, or (2) when the district court judge assigns certain "additional duties" to the magistrate judge, so long as the additional duties are not inconsistent with the laws and Constitution of the United States. *See* 28 U.S.C. §§ 636(c)(1) (consent), (b)(3) (additional duties). "[W]e have consistently held that section 636(c) requires a clear and unambiguous statement in the record of the affected parties' consent to the magistrate judge's jurisdiction." **Harris v. Folk Constr. Co.**, 138 F.3d 365, 369 (8th Cir. 1998) (internal quotation marks and alterations omitted). Here, the parties did not consent. FGS argues that accepting the jury's verdict, instructing the jury on punitive damages, accepting evidence on punitive damages, and presiding over the trial on punitive damages, are not "additional duties" under the Federal Magistrate Judges Act.

"The ministerial tasks of supervising a jury and receiving its verdict on behalf of an Article III judge are among those additional duties delegable under § 636(b)(3)." *Id.* "If a non-Article III judge may constitutionally make preliminary findings of fact and credibility in pretrial motions, *see* [*United States v.*] *Raddatz*, 447 U.S. [667] at 683-84 [1980], or preside over habeas corpus proceedings, *see Swain v. Pressley*, 430 U.S. 372, 383 (1977), then it seems clear that a magistrate judge may simply relay a district judge's instructions to the jury or to the parties." **United States v. Demarrias**, 876 F.2d 674, 677 (8th Cir. 1989).

Here, the magistrate judge accepted the jury's verdict, relayed the district judge's instructions regarding punitive damages (given to the magistrate judge over the phone by the district judge after a conference call with the parties discussing instructions), gave the punitive damages instruction, and specifically avoided making any findings of fact or conclusions of law (e.g., refusing to rule on FGS's renewed Rule 50 motion). Any issue with the magistrate judge presiding over the punitive damages portion of the trial is moot, as the district court declared a mistrial on punitive damages and Fuller withdrew her claim for them.

-14-

**H.**

Fuller sought $94,712.50 in attorney fees for 378.85 hours at $250 an hour. The district court awarded her 75% of the hours (284.14) at a rate of $225 an hour, for a total award of $63,930.94 – two-thirds of the amount requested.

FGS argues that the district court's attorney's fees award was too large, and Fuller argues that it was not large enough. "We review de novo the legal issues related to the award of attorney's fees and costs and review for abuse of discretion the actual award of attorney's fees and costs." ***Thompson v. Wal-Mart Stores, Inc.***, 472 F.3d 515, 516 (8th Cir. 2006).

First, FGS argues that Fuller is no longer entitled to fees as the prevailing party if this court reverses the substantive judgment in her favor. This argument is now moot.

Second, FGS argues that Fuller's fee award should be reduced because she experienced only partial success, citing, among other cases, *Warnock v. Archer*, 397 F.3d 1024, 1026 (8th Cir. 2005) ("the degree of his success is the most critical factor in determining a reasonable fee award"). FGS contends that because Fuller lost on her retaliation claim at summary judgment and on her non-selection claim at trial, she prevailed on only one of her three claims. Conceding that there were some common issues between the claims (meaning the work done on the claims that were lost may not have been completely wasted), FGS asserts that 50% of the original amount requested, or $47.356.25, would be an appropriate fee award, and the district court abused its discretion by awarding $63,930.94.

Fuller cross-appeals, arguing that the district court abused its discretion by reducing the fee award at all. She contends that the district court abused its discretion by lowering the hourly rate sua sponte. She claims that although she did not prevail

-15-

on every claim, she obtained an important vindication of civil rights, benefitting both society and herself personally. She emphasizes that her goal – to obtain a substantial judgment – was completely successful. Further, she argues that the claims revolved around a common core of facts, meaning that work done on unsuccessful claims was not wasted. She cites, among other cases, *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000). In *Barton*, the plaintiff was successful on her sexual harassment claim, and the court held that even though she did not prevail on all of her claims, she won a substantial judgment, vindicated important personal rights, and furthered the public's interests, and this court affirmed the district court's fee award, which reduced the requested amount by 20%.

Here, like *Barton*, Fuller did not prevail on all her claims, but won a substantial judgment, vindicated personal rights, and served the public interest. However, Fuller lost on some claims, and some billing was overstated. Therefore, the district court did not abuse its discretion by awarding Fuller 75% of her billable hours at $225.00 an hour.

### III.

The judgment of the district court is affirmed.

_____