# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-3599

———————

Rebecca Adams,

        Appellant,

    v.

O'Reilly Automotive, Inc.

        Appellee.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.
\*
\*
\*

———————

Submitted: June 11, 2008
Filed: August 15, 2008 (Corrected September 19, 2008)

———————

Before MELLOY, ARNOLD, and BENTON, Circuit Judges.

———————

ARNOLD, Circuit Judge.

Rebecca Adams sued her employer, O'Reilly Automotive, Inc., because of the sexual harassment that she suffered at the hands of Harold Schroeder, a store manager who was her supervisor. *See* 42 U.S.C. § 2000e-2(a)(1). The district court[1] granted summary judgment in favor of O'Reilly, holding that O'Reilly had made out the so-called Ellerth-Faragher affirmative defense as a matter of law. Ms. Adams appeals from that order and we affirm.

———————

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

Ms. Adams's cause of action arises under Title VII of the Civil Rights Act of 1964, which does not prohibit sexual harassment as such, but makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has determined, however, that sexual harassment "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" qualifies as sex discrimination under Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotations marks and citation omitted).

Ms. Adams maintains that Mr. Schroeder sexually harassed her for over two and a half years. She admits that she never reported his actions to company officials during this time, and that O'Reilly fired Mr. Schroeder two days after she eventually made a complaint through O'Reilly's sexual harassment hotline. Ms. Adams continues to work for O'Reilly, and is suing the company for the sexual harassment that she suffered before her report.

O'Reilly moved for summary judgment, arguing that the evidence established an affirmative defense to Ms. Adam's claim as a matter of law. "[A]n employer is not 'automatically' liable for harassment by a supervisor who creates the requisite degree of discrimination." *Faragher v. City of Boca Raton*, 524 U.S. 775, 804 (1998) (quoting *Meritor*, 477 U.S. at 72). An employer may "show as an affirmative defense to liability that the employer had exercised reasonable care to avoid harassment and to eliminate it when it might occur, and that the complaining employee had failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." *Faragher*, 524 U.S. at 805. This defense is commonly known as the *Ellerth-Faragher* defense after the pair of Supreme Court cases that elaborated it. *See id.* at 807; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

I.

To establish the first part of the *Ellerth-Faragher* defense, O'Reilly must demonstrate that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Faragher*, 524 U.S. at 807. "[P]roof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance," *id.*, but "distribution of a valid antiharassment policy provides compelling proof that [an employer] exercised reasonable care in preventing and promptly correcting sexual harassment." *Weger v. City of Ladue*, 500 F.3d 710, 719 (8th Cir. 2007) (internal quotation marks and citations omitted). There is no dispute that O'Reilly had promulgated and disseminated an anti-harassment policy; rather, the parties dispute whether the policy was reasonable and properly enforced. If the policy was unreasonable or unenforced then it cannot be used to demonstrate that O'Reilly exercised reasonable care in preventing and correcting sexual harassment.

We believe in fact that O'Reilly's stated anti-harassment policy was more than reasonable for purposes of the *Ellerth-Faragher* defense: The uncontested record indicates that O'Reilly has a stated policy of "zero tolerance," requiring investigation and documentation of every report of sexual harassment. The stated anti-harassment policy includes a complaint procedure with multiple channels for reporting sexual harassment: Employees may complain, at their election, to their supervisor, a special anonymous sexual harassment hotline, or the corporate human resources department. Complaints are treated as strictly confidential and employees are reassured that no action will be taken against them. The policy is widely disseminated through training videos and handbooks for all new employees as well as posters that are permanently displayed in all stores. As the district court noted, this policy is distinctly similar to the policy that we held sufficient to establish the first part of the *Ellerth-Faragher* defense in *Williams v. Missouri Dep't of Mental Health*, 407 F.3d 972, 977 (8th Cir. 2005), *cert. denied*, 546 U.S. 1091 (2006).

Ms. Adams contends that the stated policy was not reasonably enforced because in practice O'Reilly required a witness to corroborate the alleged sexual harassment before it would take action against an alleged harasser. She argues that this essentially inoculates the vast majority of sexual harassment against correction because sexual harassment normally occurs surreptitiously. Ms. Adams bases her contention on the testimony of Stephen Pope, O'Reilly's vice president of human resources, who was in charge of sexual harassment issues. He attested that O'Reilly requires some evidence confirming that harassment occurred before it takes action against alleged harassers, but he conspicuously did not say that a corroborating witness was required. To the contrary, Mr. Pope attested that O'Reilly would in an appropriate case infer that harassment occurred from an accumulation of uncorroborated allegations; it would in other words conclude that there was sufficient smoke to imply a fire that required action.

We note also that there is nothing objectionable in O'Reilly requiring some kind of confirmation of sexual harassment before taking action against alleged harassers: This rightly honors the vaunted principle that the burden of proof is on the accuser, and it prevents discrimination against those accused of sexual harassment. We agree with the Eleventh Circuit that, there is no "requirement that the employer credit uncorroborated statements the complainant makes if they are disputed by the alleged harasser. Nothing in the [*Ellerth-Faragher*] defense puts a thumb on either side of the scale in a he-said, she-said situation. The employer is not required to credit the statements on the she-said side absent circumstances indicating that it would be unreasonable not to do so." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1303-04 (11th Cir. 2007), *cert. denied*, 128 S. Ct. 499 (2007). We conclude therefore that Ms. Adams's argument fails.

Ms. Adams also maintains that a history of ignoring complaints and failing to discipline sexual harassers shows that O'Reilly did not implement its anti-harassment policy. Of course, if O'Reilly routinely ignored its stated anti-harassment policy, then

-4-

no matter how good the policy is in theory, O'Reilly cannot establish the first part of the *Ellerth-Faragher* defense. Ms. Adams points to the experiences of four female employees as evidence for her contention.

The first such employee is Jodi Woods. After Ms. Woods reported being sexually harassed, O'Reilly responded with a full-scale investigation, the documentation of which is contained in the record. Ms. Adams would have us construe this incident as evidence of O'Reilly's failure to implement its stated policy because the conclusion of the investigation did not credit Ms. Woods's accusations. Federal courts, however, are not in the business of micromanaging or second-guessing companies' internal investigations. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Baldwin*, 480 F.3d at 1304-05. We must afford an appropriate degree of deference to business judgment in such a situation, which means that when presented with evidence of a reasonable investigation conducted in good faith we will not condemn the result. *See Cronquist v. City of Minneapolis*, 237 F.3d 920, 927-28 (8th Cir. 2001). There is nothing in the record to indicate that O'Reilly did not conduct a reasonable investigation in good faith.

A second employee to whose experience Ms. Adams adverts is Kelly Nelson, who failed to report sexual harassment before she quit her job and became embroiled in a dispute with O'Reilly about unemployment insurance. Any failure of O'Reilly to respond to this situation thus provides little evidence that O'Reilly did not implement its stated anti-harassment policy.

The third employee to whom Ms. Adams directs our attention is Trina Louallen, who attested that she complained about sexual harassment to assistant store manager Tim Reaka and that he instructed her to contact district manager Bruce Dowell. Ms. Louallen never took any further action regarding the alleged harassment. O'Reilly's sexual harassment policy calls for employees who have complaints to report them to their "supervisor/manager" or the Human Resources Department. It is not at all clear

that Mr. Reaka was Ms. Louallen's supervisor or manager; when Ms. Louallen was asked whether she complained to "any management people," she answered, "No." But even if Mr. Reaka was Ms. Adams's manager within the meaning of O'Reilly's sexual harassment policy, his advice to her to speak to the district manager about her difficulty is not necessarily a failure on the part of O'Reilly to follow its policy: Correctly construed, it may well have been merely a direction as to how best to have that policy implemented. The inference that this evidence gives rise to, if any, is extremely weak, and in any case, Mr. Reaka's actions cannot serve by themselves to create an inference that O'Reilly was insouciant about enforcing its sexual harassment policy.

The final employee of relevance is Donna Reynolds, who attested that she complained of sexual harassment to Mr. Dowell, according to O'Reilly's complaint procedure, but O'Reilly did not respond. Assuming for purposes of summary judgment that Ms. Reynolds told the truth, as we must, her story constitutes evidence of a single failure by O'Reilly to implement its anti-harassment policy. But in light of the other evidence in the record that O'Reilly did enforce its policy, not the least of which is O'Reilly's extremely swift action in discharging Ms. Adams's harasser, we believe that a reasonable jury could not conclude on this record that O'Reilly did not implement its stated anti-harassment policy in an effective way.

Ms. Adams also argues that irrespective of O'Reilly's general anti-harassment policy, it failed to exercise reasonable care because O'Reilly had what she rather confusingly calls constructive notice of Mr. Schroeder's sexual harassment before her official complaint, but failed to take appropriate action: She argues that Mr. Schroeder's harassment was so severe and pervasive that O'Reilly must have known of it. We note that this is really an argument that there was sufficient circumstantial and other evidence that came to O'Reilly's attention that Mr. Schroeder was a sexual harasser, and thus they had actual notice of his activities. But Ms. Adams points to no evidence in the record that would link evidence of

Mr. Schroeder's alleged proclivities to his interactions with her and thus O'Reilly would have no notice that she was being sexually harassed. We agree, moreover, with the district court that the record will not support a finding that Mr. Schroeder's objectionable activities were so frequent as to make them pervasive.

Though we are not exactly sure, in arguing that O'Reilly was on constructive notice Ms. Adams may also be saying something different, namely, that in the exercise of reasonable diligence O'Reilly would have discovered that Mr. Schroeder was harassing her. This, we believe, is the sense in which the phrase "constructive notice" is sometimes used in the cases. *Cf. Weger v. City of Ladue*, 500 F.3d 710, 721 n.6 (8th Cir. 2007). We conclude that where, as here, an effective policy against sexual harassment is in place, the employer as a matter of law has satisfied its duty to inform itself about its employees' behavior. In other words, we agree with the Eleventh Circuit that "once a company has developed and promulgated an effective and comprehensive anti-sexual harassment policy, aggressively and thoroughly disseminated the information and procedures contained in the policy to its staff, and demonstrated a commitment to adhering to this policy, it has fulfilled its obligation to make reasonably diligent efforts to 'know what is going on' within the company." *Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548, 1554 (11th Cir. 1997). O'Reilly's constructive notice, if any, in the second sense in which Ms. Adams uses it, is thus irrelevant.

In conclusion, because O'Reilly had a reasonable anti-harassment policy that it properly communicated to its employees and enforced, we hold that no genuine issue of material fact exists as to whether O'Reilly exercised reasonable care to prevent and correct sexual harassment. O'Reilly has thus established the first part of the *Ellerth-Faragher* defense.

II.

To establish the second element of the defense, O'Reilly must show that Ms. Adams "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807. Whereas the first part of the defense discourages violations by crediting employers who implement effective anti-harassment policies, the "requirement to show that the employee has failed in a coordinate duty to avoid or mitigate harm reflects an equally obvious policy imported from the general theory of damages, that a victim has a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages that result from violations of the statute." *Id.* at 806 (internal quotation marks and citations omitted). A showing that an employee failed to avail him-or herself of a proper complaint procedure "will normally suffice to satisfy the employer's burden under the second element of the defense." *Id.* at 807-08.

It is undisputed that Ms. Adams failed to avail herself of the established complaint procedure for over two and one half years, but that as soon as she did, O'Reilly took action resulting in the discharge of her harasser two days later. This creates a strong inference that Ms. Adams was unreasonable in refusing to use the established complaint procedure sooner. Ms. Adams argues that her delay was reasonable because she was waiting to report Mr. Schroeder's behavior until she had a corroborating witness. Ms. Adams reported the harassment on the day that a friend of hers, who was later hired by O'Reilly, witnessed the final incident of sexual harassment. But as the Fourth Circuit put it, "*Faragher* and *Ellerth* command that a victim of sexual harassment report the misconduct, not investigate, gather evidence, and then approach company officials. Sexual harassment cases often involve the word of the harasser versus the word of the harassed employee, but this is no different from any other case where the outcome depends on the credibility of the parties' testimony. Though we understand why [an employee] would want tangible evidence to buttress her version of events, this cannot excuse her failure to report ... unwelcome conduct." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 269 (4th Cir. 2001).

Ms. Adams also argues that her delay in reporting was reasonable in light of her fear of retaliation. But she offers no evidence to show that the fear was either genuine or reasonable. We do not believe that a fear of retaliation is generally a proper excuse for failing to report sexual harassment. *Cf. Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 267 (4th Cir. 2001). Only when sexual harassment is exposed to scrutiny can it be eliminated; thus it makes sense to encourage victims of sexual harassment to come forward because, as Ms. Adams herself argues, they are often the only ones, besides the perpetrators, who are aware of sexual harassment. To excuse a victim from the duty to alert the proper authorities through proper channels specifically discourages the best hope of exposing and eliminating sexual harassment. Normally bringing a retaliation claim, rather than failing to report sexual harassment, is the appropriate response to the possibility of retaliation. *Cf. Matvia*, 259 F.3d at 270. We conclude therefore that O'Reilly has demonstrated the unreasonableness of Ms. Adam's failure to report Mr. Schroeder's harassment sooner, and that O'Reilly has thus established the second element of the *Ellerth-Faragher* defense.

Having successfully established both elements of the *Ellerth-Faragher* defense as a matter of law, we hold that O'Reilly was entitled to summary judgment.

Affirmed.

_____