[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 19, 2011
JOHN LEY
CLERK

No. 10-11238

_____

D.C. Docket No. 1:05-cv-00718-HTW

VICKI CRISWELL,

                                        Plaintiff - Appellant,

     versus

INTELLIRISK MANAGEMENT CORPORATION, INC.,
ALLIED INTERSTATE, INC.,
RICHARD LISENBY,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 19, 2011)

Before CARNES and PRYOR, Circuit Judges, and SEITZ,[*] District Judge.

PER CURIAM:

_____

[*]Honorable Patricia A. Seitz, United States District Judge for the Southern District of
Florida, sitting by designation.

The issue in this appeal is whether an employer is entitled to summary judgment under the affirmative defense that the Supreme Court articulated in Faragher v. City of Boca Raton, 524 U.S. 775, 807–08, 118 S. Ct. 2275, 2292–93 (1998), when the alleged harasser, who was the immediate supervisor of the harassed employee, made credible threats of retaliation after the employee attempted to report the harassment. Vicki Criswell is a former employee of Allied Interstate, Inc., a collection agency and subsidiary of IntelliRisk Management Corporation. After her employment with Allied ended, Criswell filed a complaint of employment discrimination under federal and state laws. Pertinent to this appeal, the district court granted a summary judgment in favor of Allied and IntelliRisk and against Criswell's claims of a hostile work environment and pre-termination retaliation. We reverse the summary judgment against Criswell's complaint of a hostile work environment because there are genuine issues of fact about the Faragher defense, and we affirm the summary judgment against Criswell's complaint of pre-termination retaliation.

## I. BACKGROUND

Vicki Criswell worked for Allied Interstate, Inc., a subsidiary of IntelliRisk Management Corporation, at its collection call center in Atlanta, Georgia. The company had an associate handbook that included an antiharassment policy. The

2

handbook stated a zero-tolerance policy regarding harassment and defined harassment. The handbook provided, as follows, that an employee who was being harassed by someone in his or her line of supervision should report the harassment to another manager or to human resources:

> Any associate who believes that he/she is being exposed to harassing or offensive conduct should immediately report it to any supervisor/manager. If the incident involves someone in his/her direct line of supervision, or if the associate is uncomfortable discussing the matter with his/her supervisor, the associate is urged to go to another supervisor/manager or to Human Resources. Complaints will be accepted in person or in writing.

The policy also assured employees that "[t]he confidentiality of all complaints and witnesses is guaranteed to the maximum extent possible. Only those who have an immediate need to know for the purposes of carrying out an investigation may know the identity of those involved." In 2001 and again in 2003, Criswell signed forms acknowledging that the policies applied to her.

Criswell's supervisor was Steve Gale. On March 13, 2002, Criswell went to the office of Gale's administrative assistant, Kim Willis, to retrieve a company-owned digital camera because Criswell was preparing a company newsletter. According to Criswell, after Willis gave her the camera, Willis removed a floppy disk from her computer and handed it to Criswell saying "You are going to need this with it." When Criswell put the floppy disk into her

3

computer she discovered pictures of Willis posing nude in her office and in Gale's office. Criswell testified that she called Donna Chapman, the senior vice president of Human Resources, the next morning and left a voice message stating, "It's critical that you get back to me." Criswell testified that she and Chapman sent emails back and forth but "it was to no avail" because "there was something every day why she couldn't get back in touch with me." Criswell also called Patty Aiken, the regional human resources director, and asked Aiken to have Chapman call Criswell "about a critical issue."

Around the time of the last email with Chapman, Criswell had a meeting with Gale in his office and "his demeanor and his statements . . . that day let [her] know in no uncertain terms that [she] had better watch what [she] was doing." She testified that Gale "made it perfectly clear that there was no one over him but Nick Petrini, [the chief executive officer,] and Nick Petrini was a very good friend of his . . . and that Nick Petrini was in his pocket and [she] needed to remember that always." Criswell explained that after this encounter with Gale she did not provide copies of the pictures to anyone at the company because she feared retaliation because of Gale's threats. In August 2002, Criswell went to Gale's office to retrieve the digital camera when Gale and Willis were present. This time the camera was on and the floppy disk was in the camera. As Criswell returned to

her office, she looked at the camera and found more pornographic pictures of Willis.

According to Criswell, she spoke with Vikas Kapoor when he replaced Petrini as chief executive officer of IntelliRisk in September 2003. Criswell testified that, among many other topics, she spoke to Kapoor about Gale's treatment of her and "[h]is harassment of [her][,]" and "him letting his assistant say or do anything to humiliate and embarrass or degrade [her]."

In December 2003, Criswell spoke with Chapman in person at a company conference in New York. According to Criswell, Chapman "said that things were going to get better, that everybody knew what was going on," and Criswell responded by saying, "I am not going to take this harassment, sexual, hostile, I am not going to take it anymore. I am going to pursue something legally but against the company if you don't tell somebody, you or Vikas, to get on a plane to Atlanta." Chapman replied that she would speak with Criswell after the conference, but "when the conference ended, she made a beeline away from [Criswell] out of the building as fast as possible."

At the end of December 2003, after Criswell returned from the company conference, she needed to use the digital camera again for company business.

After she retrieved the camera from Gale's office, Criswell discovered more pornographic pictures of Willis on the camera when she returned to her office.

On January 7, 2004, Gale was fired for unsatisfactory performance unrelated to allegations of sexual harassment. In July 2004, IntelliRisk moved the call center to Minneapolis, Minnesota, and Criswell's employment was terminated.

Criswell filed her original complaint in the district court on March 16, 2005. On January 26, 2007, a magistrate judge recommended granting summary judgment against Criswell's federal claims and dismissal of her state law claims without prejudice. The district court adopted the report and recommendation and entered a summary judgment in favor of Allied and IntelliRisk on October 9, 2007. The district court granted summary judgment in part because it concluded that the alleged harassment was not sufficiently severe or pervasive. On November 7, 2007, Criswell appealed that summary judgment to this Court.

On July 15, 2008, we affirmed in part and reversed in part. Criswell v. IntelliRisk Mgmt. Corp., No. 07-15280 (11th Cir. July 15, 2008). We held that the district court erred when it granted summary judgment against Criswell's complaint of a hostile work environment because we concluded that exposing Criswell to the pornographic images repeatedly was severe enough to have altered the terms and conditions of her employment. Id. at *5–6. We instructed the

6

district court to consider the applicability of the affirmative defense established by the Supreme Court in Faragher. Id. at *6; see Faragher, 524 U.S. at 807, 118 S. Ct. at 2293.

On remand, Allied and IntelliRisk filed a motion for summary judgment against Criswell's complaint of pre-termination retaliation, which the district court denied. On December 8, 2008, the district court referred "pending federal law claims" to the magistrate judge. The magistrate judge directed the parties to submit further briefing on the two remaining issues and expressly allowed Allied and IntelliRisk to file a new motion for summary judgment.

On February 17, 2010, after review of the magistrate judge's report and recommendation, the district court entered summary judgment in favor of Allied and IntelliRisk "as to [Criswell's] surviving claims of sexual harassment based on a hostile work environment and pre-termination retaliation." The district court ruled that the Faragher defense entitled Allied and IntelliRisk to summary judgment against Criswell's complaint of a hostile work environment. The district court also granted summary judgment against Criswell's complaint of pre-termination retaliation because Criswell failed to identify any adverse employment actions before her termination.

## II. STANDARD OF REVIEW

7

"We review de novo a district court's grant of summary judgment, applying the same legal standards as the district court." Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "view[] the facts in the record in the light most favorable to the non-moving party, and draw[] all inferences in that party's favor." Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1279 (11th Cir. 2003).

### III. DISCUSSION

We divide our discussion of Criswell's claims in two parts. First, we discuss whether the record presents a genuine issue of material fact about the Faragher defense to Criswell's complaint of a hostile work environment. Second, we discuss Criswell's complaint of pre-termination retaliation.

*A. The District Court Erroneously Granted Summary Judgment in Favor of Allied and IntelliRisk Because a Jury Could Find That Allied and IntelliRisk Failed to Prove Both Elements of the Faragher Defense.*

Faragher, 524 U.S. 775, 118 S. Ct. 2275, articulated an affirmative defense to the vicarious liability of an employer for a hostile work environment created by a supervisor if the employer exercised reasonable care to prevent the harassment,

8

and the employee failed to take advantage of opportunities to prevent or correct the harassment:

> The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Faragher, 524 U.S. at 807, 118 S. Ct. at 2293. The Supreme Court explained that the existence of an antiharassment policy, although not dispositive, should be considered when a court determines whether the defense applies:

> While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

Id. at 807–08, 118 S. Ct. at 2293.

Criswell makes several arguments to support her contention that the antiharassment policy of the company did not apply to her, but these arguments fail. It is undisputed that Allied maintained an antiharassment policy while Criswell was employed. Criswell signed acknowledgment forms on at least two

9

occasions and agreed that the antiharassment policy applied to her. The district court correctly determined that the antiharassment policy of Allied applied to Criswell.

Although the antiharassment policy applied to Criswell, the existence of a policy alone does not satisfy the employer's burden under the Faragher defense. See Whitten v. Fred's, Inc., 601 F.3d 231, 251 (4th Cir. 2010); Adams v. O'Reilly Auto., Inc., 538 F.3d 926, 929 (8th Cir. 2008); Gentry v. Exp. Packaging Co., 238 F.3d 842, 847 (7th Cir. 2001); Hurley v. Atl. City Police Dep't, 174 F.3d 95, 118 (3d Cir. 1999). An employer's antiharassment policy will not protect the employer from liability if it failed to administer the policy in good faith. Brown v. Perry, 184 F.3d 388, 396 (4th Cir. 1999). We must then consider whether there is an issue of fact about the Faragher defense.

Under the first element of the Faragher defense, a jury might reasonably infer that Allied failed to administer its antiharassment policy in good faith because Criswell presented evidence that, while she was attempting to report sexual harassment, the alleged harasser, Gale, made credible threats and warned Criswell to "watch what [she] was doing." Based on the timing of Gale's threats, a jury could reasonably infer that Gale had learned that Criswell had made multiple attempts to speak with Chapman about a "critical" matter. A jury also

could reasonably infer that the antiharassment policy—which guaranteed the confidentiality of complaints—was not being enforced. See Adams, 538 F.3d at 929 ("If the policy was . . . unenforced then it cannot be used to demonstrate that [the employer] exercised reasonable care in preventing and correcting sexual harassment.").

Allied also failed to establish that it is entitled to summary judgment on the second element of the Faragher defense. An employee must make reasonable efforts to report harassment. A jury could find that Criswell had a reasonable basis for her initial failure to report the harassment. Criswell believed that her attempts to comply with the policy were futile because her attempts to reach Chapman to complain about the harassment were reported to Gale and because Chapman made herself unavailable. See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 105 (2d Cir. 2010) ("There is no requirement that a plaintiff exhaust all possible avenues made available where circumstances warrant the belief that some or all of those avenues would be ineffective or antagonistic.").

*B. The District Court Correctly Granted Summary Judgment in Favor of Allied and IntelliRisk on Criswell's Pre-termination Retaliation Claim.*

Criswell argues that the district court did not provide her with adequate notice before it granted summary judgment in favor of Allied and IntelliRisk on

11

her pre-termination relation claim, but her argument is belied by the record. Criswell received sufficient notice: the magistrate judge set a briefing schedule that included the pre-termination retaliation claim; Allied and IntelliRisk argued for, and Criswell argued against, summary judgment on that claim; and the report and recommendation of the magistrate judge recommended summary judgment on that claim. The district court correctly determined that Criswell's pre-termination retaliation claim was without merit because Criswell failed to identify any adverse employment actions taken against her before her employment was terminated.

## IV. CONCLUSION

The summary judgment in favor of Allied and IntelliRisk on Criswell's pre-termination retaliation claim is **AFFIRMED**. The summary judgment in favor of Allied and IntelliRisk on Criswell's hostile work environment claim is **REVERSED**. We **REMAND** for further proceedings.