# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1953

_____

Jennifer L. Crawford; Gannon Q.   \*
Dvorak; Ernest Magdaleno; David  \*
Allen Peters; Michael C. Meadows, \*
                 \*
   Plaintiffs - Appellants,  \*
                 \* Appeal from the United States
                 \* District Court for the
   v.           \* District of Nebraska.
                 \*
BNSF Railway Company,    \*
                 \*
   Defendant - Appellee.  \*

_____

Submitted:  December 13, 2011
Filed:  January 11, 2012

_____

Before LOKEN, MURPHY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Jennifer Crawford, Gannon Dvorak, Ernest Magdaleno, David Peters, and Michael Meadows sued their employer BNSF Railway Company, alleging that they had been subjected to sexual and racial harassment by their supervisor Michael Duran in violation of Title VII of the Civil Rights Act of 1964.  The district court[1] granted BNSF's motion for summary judgment, concluding that it was entitled to the

_____

[1]Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

affirmative defense for supervisor harassment recognized by the Supreme Court in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998). On appeal the employees argue that BNSF is not entitled to the Ellerth-Faragher affirmative defense and that material fact questions preclude summary judgment. We affirm.

I.

We first state the facts in the light most favorable to appellants. See Brenneman v. Famous Dave's of Am., 507 F.3d 1139, 1141 (8th Cir. 2007). At all relevant times Crawford, Dvorak, Magdaleno, Peters, and Meadows were mid level supervisors at a BNSF Railway Company diesel engine facility in Alliance, Nebraska and were supervised by Michael Duran. Citing specific incidents beginning in early 2008, appellants allege that their supervisor Duran subjected them to frequent sexual harassment and, in the case of Magdaleno, racial harassment. BNSF does not directly dispute appellants' allegations about Duran's conduct but maintains that it is entitled to the Ellerth-Faragher affirmative defense. It claims that appellants did not report Duran's conduct in a timely manner and that it responded promptly and effectively once the conduct was reported.

The appellants described their supervisor's behavior in written discovery and depositions. Crawford stated that Duran slapped her buttocks, fondled her breasts, and made sexual comments. Those comments included a suggestion that she have sex with a coworker. Dvorak described inappropriate sexual remarks made by Duran, including comments on his wife's breasts and questions about with which female coworkers he would like to have sex. Dvorak also stated that once upon entering Duran's office, he saw another supervisor on his knees near Duran while the latter pretended to zip up his pants. Magdaleno, who is Hispanic, stated that Duran made inappropriate sexual comments to him "on a weekly basis" and also inappropriate racial remarks. Peters stated that Duran twice tried to grab his crotch and made

-2-

frequent inappropriate sexual comments to him. Meadows described the sexual comments Duran made to him, including that he would have to give him oral sex in order to receive favorable performance reviews or to avoid working the midnight shift. Meadows admits Duran did not retaliate after he refused to comply with such demands. Meadows also stated that Duran attempted to touch his private parts.

Appellants were aware of BNSF's "zero tolerance" policy on workplace harassment. The policy prohibited harassing conduct including "(a) sexual flirtations, touching, advances, or propositions; (b) verbal abuse of a sexual nature; (c) graphic or suggestive comments of a sexual nature; (d) sexually degrading words; and (e) displaying sexually suggestive materials." Employees were instructed to report offensive conduct through one of five channels, which included reporting to a supervisor or by an anonymous employee hotline. As supervisors, appellants were responsible for responding to any subordinate reports of harassment. The company policy stated that after a report was made, allegations would be investigated "promptly, impartially, and confidentially." It also contained guidelines explaining the ranges of discipline BNSF might apply to employees who harassed others. The policy included a provision prohibiting retaliation for reporting discrimination.

Appellants had been trained on how to report harassment. They did not initially report Duran's conduct to his supervisors despite testimony that they considered his superiors to be approachable and professional. While they concede that they never used the hotline to report Duran, they claim that reports would have been useless because BNSF had never taken any action after a hotline call. The hotline records produced by the company indicate however that each complaint was investigated and eventually closed. In some cases, even though investigation did not substantiate the complaint, the subject of the complaint was counseled by BNSF on its antiharassment policies.

Appellants contend that Duran's superiors were aware of his harassing conduct through informal comments but that they failed to take any action in response. The first example was a conversation between Duran and his superior Beau Price overheard by Meadows, in which Duran joked that there might be "peter tracks" on Price's hat. Price responded by asking Meadows if Duran always behaved like that. Meadows said yes. Meadows also stated at his deposition that after he heard Joe Hall, another superior of Duran's, complaining about Duran for unrelated reasons, he told Hall that Duran was "doing some inappropriate things and he was probably going to get himself fired for it." According to Meadows, Hall responded by saying he did not want to listen or be involved. Meadows did not pursue the matter further and did not explain to Hall the nature of any inappropriate conduct by Duran. Appellants also note two times when Duran called other employees insulting names and another incident when he allegedly slapped a female employee's rear end but received only "minimal" discipline.

In October 2008, months after the alleged harassment began, each appellant filed discrimination charges with the Nebraska Equal Opportunity Commission (NEOC) and the Equal Employment Opportunity Commission (EEOC). After filing charges, on October 28, 2008, Crawford reported Duran's conduct for the first time to BNSF. She told Joe Hall that she and four other employees had filed or were filing NEOC complaints because of Duran's conduct.

As soon as BNSF received Crawford's complaint, it began an investigation, including interviewing four of the appellants. Within two days, BNSF placed Duran on administrative leave. After completing its investigation, BNSF informed Duran on November 10, 2008 that he was being terminated from his general foreman position. Duran chose to resign. Appellants explained in their depositions that they had delayed reporting Duran's conduct due to their concern about retaliation but also due to their desire to build up evidence against him.

-4-

After receiving right to sue letters, appellants filed suit in federal court, alleging that BNSF had subjected them to sexual and racial harassment in violation of Title VII and seeking declaratory and injunctive relief and damages. The district court granted summary judgment in favor of BNSF. It declined to decide whether the employees had established the elements of their sexual and racial harassment claims, concluding that BNSF was not liable because it was entitled to its Ellerth-Faragher affirmative defense. The court concluded that BNSF had exercised reasonable care to prevent and correct promptly any harassing behavior and the appellants had unreasonably failed to take advantage of the company's reporting procedures for workplace harassment. The five employees appeal, arguing that BNSF failed to take corrective action despite knowing about Duran's behavior and that they had acted reasonably in not reporting his conduct to the company until Crawford notified it about the charges they had filed with the NEOC.

## II.

We review de novo the district court's grant of summary judgment, "viewing all evidence and all reasonable inferences most favorably" to appellants. Young-Losee v. Graphic Packaging Int'l, Inc., 631 F.3d 909, 911 (8th Cir. 2011). Summary judgment is appropriate only if there is no genuine issue of material fact and BNSF is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment" because of the individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment may violate Title VII where it is sufficiently "severe or pervasive" so as to create an "objectively hostile or abusive work environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 20 (1993).

An employer is vicariously liable for a supervisor's actionable sexual or racial harassment of employees unless the employer can establish the Ellerth-Faragher affirmative defense. Gordon v. Shafer Contracting Co., Inc., 469 F.3d 1191, 1195 (8th Cir. 2006). An employer may only assert this affirmative defense when it has taken no tangible employment action against the allegedly harassed employee. Id. The Ellerth-Faragher affirmative defense protects an employer otherwise vicariously liable for a harassing supervisor's conduct if the employer can show that (a) it exercised "reasonable care to prevent and correct promptly any sexually harassing behavior"; and (b) the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807; see Ellerth, 524 U.S. at 765.

The first part of this defense furthers Title VII's "primary objective" of avoiding harm by "recogniz[ing] the employer's affirmative obligation to prevent violations and giv[ing] credit . . . to employers who make reasonable efforts to discharge their duty." Faragher, 524 U.S. at 806. The second part "reflects an equally obvious policy imported from the general theory of damages, that a victim has a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages that result from violations of the statute." Id. (internal quotations and citation omitted).

A.

Appellants concede that "distribution of a valid antiharassment policy provides compelling proof" that an employer exercised reasonable care to prevent and correct promptly harassing behavior, see Weger v. City of Ladue, 500 F.3d 710, 719 (8th Cir. 2007) (citation omitted), but they argue that BNSF's policy was not actually enforced and thus cannot satisfy the first part of the Ellerth-Faragher defense. See Adams v. O'Reilly Auto., Inc., 538 F.3d 926, 930 (8th Cir. 2008). Appellants cite alleged

experiences of other coworkers and their own interactions with Duran's superiors to support their contention that BNSF failed to enforce its antiharassment policy.

Appellants argue that although other employees had complained to BNSF about Duran, BNSF had taken only "minimal action" such as counseling. They cite an incident in which Duran called employee Adele Kreta a "fucking whore or bitch" and another where he called employee Ryan Twogood a "faggot and white trash." The record reveals however that BNSF investigated these incidents and took action in response. This included meeting with Duran, counseling him on appropriate workplace behavior, and requiring him and the others involved to attend a seminar on workplace harassment. We "afford an appropriate degree of deference to business judgment" where the record shows that the employer conducted a reasonable investigation in good faith, as here. Adams, 538 F.3d at 930. The fact that appellants would have desired harsher responses does not make BNSF's otherwise valid policy ineffective.

Magdaleno stated at his deposition that a third employee, Ann Osborn, told him that Duran had "slapped her on the ass" and that she was going to report it on the hotline. Magdaleno conceded he was not sure if Osborne ever reported the incident, and BNSF's hotline records do not show any such report. In fact the hotline records do not show any harassment complaints against Duran. Even if Osborne did report the alleged harassment, a "single failure by [BNSF] to implement its anti-harassment policy" would not be sufficient to conclude that it had not effectively implemented its policy where there was other evidence that it enforced its policy. Id. at 931. Of special significance was BNSF's "extremely swift action" in investigating and terminating Duran once Crawford finally reported Duran's behavior. See id.

Appellants contend that the hotline records show that BNSF never took any action regarding complaints it received. Magdaleno stated that a number of coworkers had told him that they had reported various harassing incidents through the

hotline but had not been satisfied with the response. Magdaleno said they felt that reporting to the hotline was a waste of time. The hotline records reveal that each complaint was investigated and the relevant parties were interviewed but that the allegations could not be substantiated or were outside the scope of the hotline's intended purpose. BNSF's business judgment is owed some deference in evaluating its response to those calls. See id. at 930.

Finally, appellants argue that Duran's superiors knew of his harassing behavior prior to Crawford's complaint but failed to take any action. In assessing whether an employer exercised reasonable care to correct promptly any sexually harassing behavior, "the employer's notice of the harassment is of paramount importance." Weger, 500 F.3d at 720 (citation omitted). Appellants' attempt to show that BNSF knew of Duran's harassing behavior prior to Crawford's complaint to Hall is not supported by the record.[2] Meadows's comment to Hall that Duran was doing "inappropriate things" did not mention anything about sexual harassment, and the reference to "peter tracks" was ambiguous and would not have provided actual notice of sexual harassment. Because BNSF had a "published policy that provides a procedure for reporting suspected harassment, [appellants] must have invoked this procedure in order to establish actual notice." Id. at 721.

Contrary to appellants' contention, the circumstances of this case are quite distinct from those in Ogden v. Wax Works, Inc., where we upheld a jury verdict in favor of a plaintiff who had been subjected to sexual harassment by a supervisor. 214 F.3d 999 (8th Cir. 2000). In concluding that the employer was not entitled to the Ellerth-Faragher affirmative defense, we noted that the employer had minimized the plaintiff's complaints of sexual harassment, performed a cursory investigation, and

_____

[2]In addition to arguing actual knowledge, appellants contend that BNSF had constructive knowledge of Duran's conduct. Constructive knowledge is irrelevant for Ellerth-Faragher purposes where an effective antiharassment policy is in place. See Adams, 538 F.3d at 932.

eventually forced her to resign without disciplining the harasser. See id. at 1007. Here, in contrast, BNSF took prompt remedial action as soon as Crawford reported the harassment. Duran was terminated less than two weeks later. See Weger, 500 F.3d at 722 (where harassment ended soon after report was made, employer "satisfied its duty under the correction prong of the first element of the Ellerth-Faragher affirmative defense").

Given the evidence of BNSF's comprehensive antiharassment policy and its prompt and effective response when it was notified about Duran's harassment, we conclude that the company exercised reasonable care to prevent and promptly correct any harassing behavior, meeting the first part of the Ellerth-Faragher affirmative defense as a matter of law.

B.

We next consider whether appellants "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807. Establishing that employees failed to avail themselves of a proper complaint procedure "normally suffice[s] to satisfy the employer's burden under the second element of the defense." Id. at 807–08. Appellants do not dispute that they failed to avail themselves of BNSF's complaint procedure for approximately eight months, until after they filed the NEOC complaints. As soon as Crawford reported the harassment, BNSF took prompt and effective action in investigating the complaint, putting Duran on administrative leave, and terminating him less than two weeks later. These facts create a "strong inference" that appellants were unreasonable in not invoking BNSF's complaint procedure sooner. Adams, 538 F.3d at 932.

Appellants contend that their failure to report Duran was reasonable because they feared retaliation. While a "truly credible" threat of retaliation may make a

delayed report reasonable, <u>Weger</u>, 500 F.3d at 725 (citation omitted), here appellants point to no evidence to show that their fear of retaliation was either "genuine or reasonable." <u>Adams</u>, 538 F.3d at 932. The record is devoid of any evidence of prior retaliation or threats of retaliation by BNSF for reporting harassment. Appellants concede that they felt comfortable approaching supervisors on other issues and that those supervisors acted professionally. Moreover, BNSF's antiharassment policy contained an antiretaliation provision and appellants could have availed themselves of an anonymous hotline.

We conclude that appellants' alleged fear of retaliation does not make their delay in reporting reasonable. <u>Weger</u>, 500 F.3d at 725. Nor does the fact that appellants felt their reports would have fallen on deaf ears excuse their delay in reporting. <u>Id.</u> at 725–26. Further, the record indicates that part of the reason for appellants' delay in reporting was to gather more evidence against Duran. An effort to obtain additional evidence against a harasser does not make delay in reporting reasonable. <u>See</u> <u>Adams</u>, 538 F.3d at 932. We conclude that appellants "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." <u>Faragher</u>, 524 U.S. at 807.

Since we agree with the district court that BNSF has established both parts of the <u>Ellerth</u>-<u>Faragher</u> affirmative defense as a matter of law and is entitled to summary judgment on that basis, we also decline to address the merits of appellants' sexual and racial harassment claims.

III.

Accordingly, the judgment of the district court is affirmed.

_____