[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 26, 2012
JOHN LEY
CLERK

No. 11-10657

_____

D.C. Docket No. 9:09-cv-81290-KLR


JANET BRUSH,

                                                        Plaintiff - Appellant,

                           versus

SEARS HOLDINGS CORPORATION,
d.b.a. Sears, Roebuck & Co.,

                                                        Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 26, 2012)

Before DUBINA, Chief Judge, FAY, and KLEINFELD,* Circuit Judges.

FAY, Circuit Judge:

_____

  * Honorable Andrew J. Kleinfeld, United States Circuit Judge, Ninth Circuit, sitting by
designation.

Long considered a formidable weapon against an employer's unlawful practices in the workplace, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., has historically been used by plaintiffs to recover for discrimination on such bases as race, color, sex or national origin.[1] None of those recognized bases for recovery are implicated here. At issue instead is an employee's termination following a company's internal investigation into an allegation of workplace sexual harassment.[2] The plaintiff here, though, was neither the employee that complained of the sexual harassment nor the employee allegedly responsible for that harassment. Rather, Plaintiff-Appellant Janet Brush ("Brush") was one of the employees tasked with conducting the internal investigation. Defendant-Appellee Sears Holding Corporation ("Sears") terminated her soon after.[3] Brush subsequently filed suit against Sears, alleging she was terminated in

---

[1] 42 U.S.C. § 2000e-2; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800 (1973) ("The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens.") (internal citations omitted); Meritor Savings Bank v. Vinson, 477 U.S. 57, 66 (1986) (recognizing discrimination based on sex is actionable under Title VII) .

[2] The Complaint at issue here alleges causes of action under both Title VII and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.10 et seq. However, we need not distinguish between the two, since Plaintiff-Appellant concedes that both causes of action are interpreted under similar standards. See also Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1389 (11th Cir. 1998).

[3] Brush was employed by Kmart, which is a subsidiary of Sears Holding Corporation. However, for the sake of clarity with respect to the named defendant here, we refer to Defendant-

retaliation for certain actions she took as an investigator of the sexual harassment claim.

Upon consideration of Sears' motion for summary judgment, the district court found Brush could not support a Title VII retaliation claim. Among the deficiencies the district court identified in Brush's claim was the fact that she was not engaged in "protected activity" as defined by Title VII and therefore her subsequent termination could not be actionable as retaliation. We affirm.

## I.

"This court reviews a district court's grant of summary judgment de novo, applying the same legal standards used by the district court." Galvez v. Bruce, 552 F.3d 1238, 1241 (11th Cir. 2008). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Swisher Int'l., Inc. v. Schafer, 550 F.3d 1046, 1050 (11th Cir. 2008). "In making this determination, we . . . draw[ ] all reasonable inferences in the light most favorable to the nonmoving party." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999). Of course, the nonmoving party must go beyond the pleadings to present affirmative evidence demonstrating that there is a genuine issue of material fact.

_____

Appellee as "Sears."

3

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, a plaintiff's failure to support an essential element of her case necessarily renders all other facts immaterial and requires the district court to grant summary judgment for the defendant. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## II.

Janet Brush worked for Sears or its affiliates, off and on, for over fifteen years. In her most recent stint, Brush was employed from approximately 2000 to November 20, 2007. Beginning in 2006, Brush accepted a position as a Loss Prevention District Coach. The district she oversaw contained 20 stores. Her job was to minimize varieties of risk to the company, including losses arising from theft, as well as to protect Sears' assets, including its employees. In that capacity, she interacted with numerous Sears employees during the course of her employment. Her immediate boss was David Pearson, who served as Sears' Regional Loss Prevention Coach.

During Brush's employment with Sears, Sears had noted several deficiencies relating to Brush's work performance. These deficiencies first became apparent at the end of 2006. Early the next year, Sears placed Brush on a Performance Improvement Plan ("PIP") to address these deficiencies. Although Brush's PIP plan was extended several months to enable her to meet the relevant

4

criteria, by all accounts Brush completed her PIP on or around September 20, 2007.

Only a few days before her completion of the PIP plan, on or around September 15, 2007, Brush received a telephone call from an Assistant Store Coach. The Assistant Store Coach, whom we refer to simply as "Mrs. Doe," informed Brush that she was being sexually harassed by her Store Coach. Brush notified Sears of the allegation. Sears suspended the Store Coach accused of harassment and directed Brush and another Sears employee, Scott Reuter, to meet with Mrs. Doe to investigate further. They did so, but both Brush and Reuter felt that she was not entirely forthcoming during their interview. Reuter and Brush then determined that Brush should meet with Mrs. Doe alone "to see if she wanted to add anything to her prior interview." Compl. ¶ 40. Brush did so, at which time Mrs. Doe informed her that she had been raped multiple times by the Store Coach. However, Mrs. Doe asked that neither her husband nor the police be informed of the rape. Brush notified Reuter of what Mrs. Doe told her, and they subsequently reported the same to Sears. Brush "stated that [Sears] need[ed] to contact the Orange County Police." Compl. ¶ 48. Sears declined, citing the investigation's incomplete status and Mrs. Doe's own desire not to involve law enforcement. Sears, however, terminated the employment of the Store Coach, the man who Mrs.

5

Doe said harassed and raped her. Brush nonetheless continued to urge the reporting of the alleged rape.

On November 20, 2007, Sears terminated Brush's employment, citing her violation of Sears' policy relating to the investigation of sexual harassment claims.[4] One week later, Brush filed a charge with the EEOC, alleging sex discrimination and retaliation. The EEOC issued a finding that there was reasonable cause to support Brush's retaliation claim.

Nearly two years later, Brush filed suit against Sears, alleging that she was dismissed in retaliation for "her opposition to the nature and performance of the [sexual harassment] investigation." Compl. ¶ 5. Specifically, her Complaint alleges that she was terminated because "she uncovered that [Sears] had negligently allowed three forcible rapes to occur on its premises and did nothing about it," Compl. ¶ 59; because "she raised rape issues that would have been kept hidden if she had allowed Mr. Reuter to conduct the interviews," Compl. ¶ 60; "because of her participation in the investigation and her opposition to the way [Sears] was conducting the investigation," Compl. ¶ 61; and because "she was

---

[4] Specifically, Sears alleges Brush violated the sexual harassment policy in meeting with the complainant alone, in suggesting to the employee that she had been raped without asking an open-ended question to see what the employee said, and in failing to properly investigate the claim by obtaining video evidence.

considered a trouble-maker and whistleblower," Compl. ¶ 62.

Through discovery, Brush produced evidence that showed she "opposed the alleged sexual battery [experienced by Mrs. Doe], explained [to her employer, Sears] that the seriousness of these allegations required police intervention, and that she wanted to call the Orange County Police." Appllnt Br. at 8. Furthermore, deposition testimony demonstrated that Brush was "very adamant . . . that the authorities should be involved because Sears was not capable of investigating this type of criminal activity." Id. (internal quotations and citations omitted). Finally, Brush also provided some circumstantial evidence that her termination may have been related to her involvement in the internal investigation conducted by Sears. In particular, she cited a declaration by her former boss, Pearson, who stated that he "believe[d] Ms. Brush was terminated because of her involvement in uncovering and opposing rapes that took place on [Sears'] property." Id. at 11.

Nonetheless, subsequently Sears moved for summary judgment, contending that Brush could not establish a prima facie case of retaliation and that there was no genuine issue of material fact showing that Sears' decision to terminate Brush was pretextual. The district court agreed. Brush now appeals.

### III.

Title VII's anti-retaliation provision makes it unlawful for an employer to

discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice . . . , or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008) (alterations in original) (citing 42 U.S.C. § 2000e–3(a)). As noted by the Supreme Court in Crawford v. Metropolitan Government of Nashville & Davidson County, Tenn., 555 U.S. 271, 274 (2009), the two clauses of the anti-retaliation provision are known as the "participation clause" and the "opposition clause." Although Brush's allegations encompassed both means of retaliation, she conceded before the district court that she may only recover under the opposition clause in this instance. See EEOC v. Total Sys. Svcs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000) (prohibiting recovery under participation clause where no EEOC complaint was filed prior to termination).[5] Therefore, we need only address her claim insomuch as it pertains to Brush's opposition to an allegedly unlawful employment practice by Sears. See also Little v. United Techs. Carrier Transicold

---

[5] Nonetheless, Brush urges on appeal that Total Sys. is no longer good law because of such subsequent decisions as Thompson v. North America Stainless, LP, 131 S.Ct. 863 (2011); Kasten v. Saint-Gobain Performance Plastics Corp., 131 S.Ct. 1325 (2011); and Crawford v. Metropolitan Government of Nashville & Davidson County, Tennessee, 555 U.S. 271 (2009). We need not address that argument at this time because, "[u]nder the prior panel precedent rule, we are bound by earlier panel holdings . . . unless and until they are overruled en banc or by the Supreme Court." United States v. Smith, 122 F.3d 1355, 1359 (11th Cir. 1997).

Div., 103 F.3d 956, 960 (11th Cir. 1997) (noting also that plaintiff must have an objectively reasonable belief that the employer engaged in an unlawful employment practice).

Brush's case rests upon her belief that her opposition to rape and Sears' handling of Mrs. Doe's allegations are actionable under Title VII. Under the framework provided by McDonnell Douglas Corp.,[6] Brush must "carry the initial burden under the statute of establishing a prima facie case." McDonnell Douglas Corp., 411 U.S. at 802. We need only turn to the remaining stages of the burden-shifting inquiry under McDonnell Douglas—articulation of "some legitimate, nondiscriminatory reason" by the defendant for the employment action, id. at 802, and showing of pretext by the plaintiff regarding defendant's stated reasons for the employment action, id. at 804 – if a prima facie case is established.

To make a prima facie showing of a retaliation claim, a plaintiff must demonstrate that 1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal link between the

---

[6] While Brush disputes the applicability of McDonnell Douglas under these circumstances, claiming that Pearson's declaration provides direct evidence of retaliation by Sears, we cannot agree. Pearson's declaration merely states his belief that Brush's termination was in retaliation for Brush's opposition of rape; nowhere does the declaration or any other evidence provided by Brush detail specific conversations, communications or other direct evidence of retaliatory intent on the part of Sears. Accordingly, Brush can only prove her case through circumstantial evidence, which necessitates the McDonnell Douglas framework.

9

protected activity and the subsequent materially adverse employment action. Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1212 (11th Cir. 2008). It is the first prong, protected activity, which we now address.

Quite simply, Brush's disagreement with the way in which Sears conducted its internal investigation into Mrs. Doe's allegations does not constitute protected activity. As required by the explicit language of 42 U.S.C. § 2000e-3(a), to qualify as "protected activity," a plaintiff's opposition must be to a "practice made unlawful by [Title VII.]" Since there is no evidence of Brush's opposition to any unlawful practice here, it follows that Brush can support no claim under Title VII.

Although she seeks to predicate her claim for retaliation upon Mrs. Doe's claims of sexual harassment and rape, Brush was neither the aggrieved nor the accused party in the underlying allegations. Instead, she was one of the Sears employees tasked with conducting the internal investigation. As such, her claims relate not to Mrs. Doe's allegations, but instead to the procedures of the internal investigation conducted by Sears. Although we have found no published Eleventh Circuit cases regarding whether such a basis is a viable foundation for a Title VII retaliation claim, cf. Entrekin v. City of Panama City, Fla., 376 Fed. Appx. 987, 994 (11th Cir. 2010) (per curiam) (unpublished case disallowing recovery under similar circumstances), certainly internal investigations alone do not constitute

10

discriminatory practices. See, e.g., Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1304 (11th Cir. 2007) (detailing type of investigative procedures acceptable under Title VII). Nor do federal courts mandate the procedures that are required under such circumstances. See Adams v. O'Reilly Automotive, Inc., 538 F.3d 926, 930 (11th Cir. 2008) ("Federal courts, however, are not in the business of micromanaging or second-guessing companies' internal investigations."); see also Entrekin, 376 Fed. Appx. at 994 ("Title VII does not . . . establish requirements for an employer's internal procedures for receiving sexual harassment complaints, or even require that employers must have an internal procedure for receiving such complaints.").

Nonetheless, Brush argues that an investigative manager's role in reporting a Title VII violation necessarily qualifies as a "protected activity" relating to a discriminatory practice. Reply Br. at 5 ("[W]hen an employee communicates a belief that her employer has engaged in employment discrimination, that communication virtually always constitutes protected activity."). In support, Brush cites Crawford. In Crawford, the Supreme Court held that an employee that responded to an inquiry about whether she had ever witnessed "inappropriate behavior" from a specific employee was protected by Title VII. Crawford, 555 U.S. at 280. In so finding, the Court rejected the Sixth Circuit's reasoning that the

opposition clause of Title VII "demands active, consistent 'opposing' activities to warrant . . . protection against retaliation." Id. at 275 (citing 211 Fed. Appx. 373, 373 (6th Cir. 2006)). Instead, the Court stated that the Crawford plaintiff's opposition was no less actionable because she had been asked about sexual harassment rather than having volunteered similar allegations. Crawford, 555 U.S. at 277-78.

Brush would have us extend Crawford's reasoning not just to those directly impacted by workplace discrimination but to all individuals involved in the investigation of that discrimination, no matter how far distant. Although we have not yet passed on the transitive property of a Title VII claim, other circuits have by creating what is known as the "manager rule." In essence, the "manager rule" holds that a management employee that, in the course of her normal job performance, disagrees with or opposes the actions of an employer does not engage in "protected activity." See McKenzie v. Renberg's Inc., 94 F.3d 1478 (10th Cir. 1996); Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617 (5th Cir. 2008) (same). Instead, to qualify as "protected activity" an employee must cross the line from being an employee "performing her job . . . to an employee lodging a personal complaint." McKenzie, 94 F.3d at 1486. While Brush argues that

12

Crawford has foreclosed the "manager rule,"[7] we cannot agree. Crawford pertained only to whether the reporting of a harassment claim was covered by Title VII where the reporting was solicited rather than volunteered. Crawford, 555 U.S. at 277-78. It did not address whether a disinterested party to a harassment claim could use that harassment claim as its own basis for a Title VII action. Accordingly, we find the "manager rule" persuasive and a viable prohibition against certain individuals recovering under Title VII.

Considering the facts adduced by the parties in light of the "manager rule," there can be no dispute that Brush acted solely as a manager here. In her capacity as an investigator of Mrs. Doe's sexual harassment claim, Brush informed Sears of Mrs. Doe's allegations, investigated those allegations, and reported the results of her investigation to Sears. Brush's job responsibilities involved exactly the type of actions that Brush took on Mrs. Doe's behalf. There is simply no evidence in the

---

[7] Indeed, Brush cites several district court cases she claims support this position: Schanfield v. Sojitz Corp. of America, 663 F. Supp. 2d 305 (S.D.N.Y. 2009), and Rangel v. Omni Hotel Management Corp., No. SA-09-CV-0811 OG, 2010 WL 3927744 (W.D. Tex. Oct. 4, 2010). However, it should go without saying that we are not bound by the decisions of other circuits, let alone the decisions of district courts from other circuits. See, e.g., United States v. McGarity, – F.3d –, 2012 WL 370104, *35 n.66 (11th Cir. Feb. 6, 2012) ("It is axiomatic that this Circuit is bound only by its own precedents and those of the Supreme Court . . . and certainly this is even more true in the context of a district court determination from another circuit.") (citing Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)). This is even more obvious when considering an opinion like Rangel, which is actually a magistrate judge's Report and Recommendation. See Rangel, 2010 WL 3927744, *1. Nonetheless, both Rangel and Schanfield are easily distinguishable from the facts at issue here.

13

record that Brush was asserting any rights under Title VII or that she took any action adverse to the company during the investigation. Cf. id. at 1486-87. Disagreement with internal procedures does not equate with "protected activity" opposing discriminatory practices. Under such circumstances, the breadth of Crawford's application to individuals who suffered workplace discrimination is not transferrable to the entirety of the management string that might review any such allegation.[8]

The evidence in this record shows that Brush's opposition was to Sears' failure to immediately summon law enforcement and a more general "opposi[tion] to the grave forcible sex [alleged by Mrs. Doe]." Brush, however, has not demonstrated how these actions were criminally unlawful on the part of Sears. She has cited no state or federal law that would have mandated Sears take some action other that what it took. Sears fired the accused offender. Nor has Brush demonstrated that Mrs. Doe in this instance wanted her claims reported to the police. In fact, it is undisputed that Mrs. Doe informed Brush and Sears that she did not want either the police or her husband informed of what happened to her.

---

[8] Of course, we do not foreclose the ability of one employee to "oppose" discrimination on another employee's behalf. Cf. Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (recognizing right of third party to recover for retaliation under such a basis). However, where, as here, a third party is neither directly interested in the underlying discrimination nor acting beyond the scope of her employment in opposing an employer's action, no Title VII claim will lie.

14

Under these circumstances, then, it is impossible for Brush to have had a reasonable belief that Sears' actions were unlawful. Cf. Little, 103 F.3d 956 at 960. Therefore, Brush's deposition testimony that she was "opposed [to] the way that Sears Holding took care of our associates, took care of the investigation" simply refutes any claim that she was engaged in protected activity.

As a final matter, to the extent that Brush predicates her argument of unlawful employment practices upon the alleged rapes by the Store Coach, her argument necessarily fails. She conceded both before the district court and at oral argument that Sears is not tolerant of rape and, in fact, did not tolerate it in this instance. Nonetheless, she seeks to found her opposition upon her principled stance against rape generally, and rape in the workplace particularly. However, opposition against a general type of criminal behavior does not, without some connection to the employer, constitute the type of opposition to an unlawful employment practice that was contemplated by Congress in passing Title VII.

Therefore, we echo the words of Entrekin: "because [Brush's] complaint involved the adequacy of [Sears'] internal procedure for receiving sexual harassment complaints, rather than an employment practice that Title VII declares to be unlawful," Entrekin, 376 Fed. Appx. at 994, her criticisms do not relate to unlawful activity. And, since unlawful activity is the sine qua non of "protected

15

activity" as defined by Title VII, Brush cannot satisfy the first requirement of a prima facie case for retaliation.[9]

Given our holding that Brush cannot satisfy the first factor of the three-part prima facie case for retaliation, we need not address the district court's other bases for granting summary judgment to Sears. In particular, we decline to address the evidence of Brush's PIP; Sears' proffered legitimate, non-discriminatory basis for Brush's termination; or Brush's subsequent argument of pretext under the burden-shifting inquiry under McDonnell Douglas.

## IV.

Having studied the record along with the parties' briefs, and entertained oral argument, we find that Brush did not engage in statutorily protected activity and therefore cannot support a claim for retaliation under Title VII. Accordingly, we affirm the district court's order granting summary judgment to Defendant-Appellee Sears Holding Corporation.

**AFFIRMED**.

---

[9] Brush urges us that the EEOC letter of determination should have some evidentiary weight. While we agree that an EEOC reasonable cause finding may be admissible as evidence, Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1288 (11th Cir. 2008), it alone does not create a genuine dispute of material fact preventing the granting of summary judgment.